UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                  **14-CR-164-WMS**

                    v.                                                    **NOTICE OF MOTION**

ARI ELIAS BAUM,

                    Defendant.

_____


| | |
|---|---|
| **MOTION BY:** | Brian P. Comerford, Assistant Federal Public Defender. |
| **DATE, TIME & PLACE:** | Before the Honorable Jeremiah J. McCarthy, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York, on **May 1, 2015, at 2 PM.** |
| **SUPPORTING PAPERS:** | Affirmation of Assistant Federal Public Defender Brian P. Comerford, dated March 27, 2015. |
| **RELIEF REQUESTED:** | Various forms of relief as set forth in the attached Affirmation. |
| **DATED:** | Buffalo, New York, March 27, 2015. |

<p style="margin-left:50%">
<u>**/s/Brian P. Comerford**</u><br>
Brian P. Comerford<br>
Assistant Federal Public Defender<br>
Federal Public Defender's Office<br>
300 Pearl Street, Suite 200<br>
Buffalo, New York 14202<br>
(716) 551-3341, (716) 551-3346 (Fax)<br>
brian_comerford@fd.org<br>
Counsel for Defendant Ari Elias Baum
</p>

**TO:** Frank T. Pimentel
        Assistant United States Attorney

AO 72A
(Rev. 8/82)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                              **14-CR-164-WMS**

                              v.                                              **AFFIRMATION**

ARI ELIAS BAUM,
                              Defendant.

_____

       **BRIAN P. COMERFORD,** affirms under penalty of perjury that:


       1.       I represent the defendant, Ari Baum.  Mr. Baum is charged in a four-count indictment alleging the following: (Counts 1 and 4) making a false statement in violation of 42 U.S.C. § 1383a(a)(2), and 18 U.S.C. § 1001; (Count 2) social security fraud in violation of 42 U.S.C. § 1383a(a)(3); and (Count 3) theft of Government benefits in violation of 18 U.S.C. § 641.


       2.       This affirmation is made in support of Defendant's motions for the following relief:

       I.       SUPPRESSION OF FACEBOOK EVIDENCE

       II.       SUPPRESSION OF STATEMENTS

       III.       DISMISSAL / MERGER OF COUNTS 1, 2, and 4

       IV.       DISCOVERY AND INSPECTION

       V.       BILL OF PARTICULARS

       VI.       *BRADY* MATERIAL

       VII.       MOTION FOR DISCLOSURE OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b), 608 AND 609

       VIII.       DISCLOSURE OF WITNESSES' STATEMENTS

       IX.       PRESERVATION OF ROUGH NOTES

       X.       FURTHER RELIEF

AO 72A
(Rev. 8/82)

## I.  SUPPRESSION OF FACEBOOK EVIDENCE

3.      The Government obtained a search warrant from the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge on November 21, 2013.  (Exhibit A).  This search warrant was issued to investigate a violation of 18 U.S.C. § 2339A, providing material support to terrorists.  The warrant authorized the Government to obtain extensive information from Facebook accounts of Ari Baum and a second individual identified as Abu Malik.  This search warrant was not supported by probable cause, it violates Mr. Baum's rights under the Constitution, and it is overbroad in the materials it permits the Government to seize.  The Court should conduct a hearing if necessary and suppress the information obtained from this warrant.

4.      In the warrant application (Exhibit B, "Application"), the Government provided the following information to show probable cause that Mr. Baum was providing material support to terrorists:

   a.    In 2010, three-years prior to the issuance of the search warrant, Mr. Baum was accused (by an unspecified individual not disclosed to the Magistrate Judge) of receiving training in an unspecified terrorist training camp.  The application notes that these charges were investigated and the case was closed when they could not be substantiated.  (Application, ¶ 22).

   b.    In 2011, two-years prior to the issuance of the search warrant, a restaurant operator called the FBI and reported Mr. Baum, described as a "Middle Eastern Male" customer, dressed in traditional Muslim clothing, had told his waitress that he was having his last meal.  The application states that the waitress recanted this statement.  (Application, ¶ 23).

   c.    In 2011, during the investigation at the restaurant, Mr. Baum received a text-message (from an unspecified individual) stating: "Jesus rose again today..ha..ha..ha.  I heard you are being trained for being used as a terrorist."  The application does not specify whether there was consent for the search of Mr. Baum's phone.  (Application, ¶ 26).

   d.    In March of 2013, eight-months prior to the issuance of the warrant, "Source 1" and "Source 2" told Government agents that Mr. Baum "lectured" them concerning the events of the "Arab Spring."  Baum

recommended YouTube video's described as "propaganda" and told them that he had been in Syria and made statements that he was "not afraid to die." (Application, ¶ 28-29).

e.     In April of 2013, seven-months prior to the issuance of the warrant, "Source 3"—who described Mr. Baum as bipolar and off his medication— told agents that Mr. Baum had previously resided in Yemen and had traveled to Syria, that he was "a devout Muslim and is fixated on converting family and friends to Islam," and that "some people are made uncomfortable by his proselytizing." Source 3 told agents that he/she "does not believe Baum is dangerous" and that Baum "does not pose a threat to national security." (Application, ¶ 30).

f.     In June of 2013, five-months prior to the issuance of the warrant, "Source 4" told agents that Mr. Baum was making "extreme, aggressive, and concerning" posts concerning religion on Facebook. Mr. Baum allegedly called Source 4 a "denier" because he does not accept Islam. Source 4 described Mr. Baum as "jumbled and ranting" and said that Baum's Facebook posts were occasionally incoherent and inarticulate. (Application, ¶ 31).

g.     In July of 2013, four months prior to the issuance of the warrant, Mr. Baum posted a picture on Facebook of a man and woman sitting at a table, dressed in military attire and holding weapons, with the caption "husband and wife fighting for Islam!" Mr. Baum commented on Facebook "the most beautiful photos I have ever seen!" (Application, ¶ 34).

g.     In August of 2013, three-months prior to the issuance of the warrant, Baum—who told a friend he was having trouble returning to the U.S. because he was on the no-fly list—changed his Facebook status to "too dangerous to fly." (Application, ¶ 33). Mr. Baum was subsequently able to return to the U.S. without incident.

h.     Throughout 2013, Mr. Baum traveled extensively—visiting Morocco, Egypt, Turkey, the United Arab Emirates, France, and eventually returning home to Buffalo, NY. His passport indicated that in 2008 and 2009 he traveled to Yemen. (Application, ¶ 35-36).

i.     In September of 2013, the month prior to the issuance of the search warrant, a "Facebook friend" of Mr. Baum's identified as "mnds.yabroody" "came to the attention of the FBI." The agent indicated that Yabroody "likes" groups on Facebook showing support of the Syrian rebels that Yabroody was "sympathetic to the Syrian rebels fighting the Syrian Government. (Application, ¶ 37).

j.     The application lists various inflammatory posts by Yabroody on his Facebook page. (Application, ¶ ¶ 38-46). Notably, **none** of Yabroody's posts are attributed to, associated with, or commented on by Mr. Baum.

The sole connection is that Yabroody is one of Mr. Baum's "friends" on Facebook.

5.      The information submitted in support of the search warrant does not support a finding of probable cause that Mr. Baum was involved in the material support of terrorism.  On the contrary, Mr. Baum's conduct as described in the search warrant consists of religious and political speech, travel to various countries, and "friending" someone on Facebook.  There is no indication that he ever threatened anyone, that he committed any crimes, or that he associated with any "terrorists" beyond "friending" an unidentified person on Facebook who posted inflammatory content.  Notably, Mr. Baum never commented-on or re-posted this content.  This individual was one of over a thousand "friends" Mr. Baum had on Facebook.  The "friending" of someone who posts inflammatory materials on Facebook—without some evidence that would show Baum was engaged in criminal activity—cannot support the issuance of a search warrant.

6.      Moreover, the issuance of a search warrant based primarily on constitutionally-protected activities violates Mr. Baum's Constitutional rights under the First and Fourth Amendments.  As the Supreme Court has explained:

> National security cases . . . often reflect a convergence of First and Fourth Amendment values not present in cases of 'ordinary' crime. Though the investigative duty of the executive may be stronger in such cases, so also is there greater jeopardy to constitutionally protected speech. 'Historically the struggle for freedom of speech and press in England was bound up with the issue of the scope of the search and seizure power,' *Marcus v. Search Warrants etc.*, 367 U.S. 717, 724 (1961).  History abundantly documents the tendency of Government—however benevolent and benign its motives—to view with suspicion those who most fervently dispute its policies. Fourth Amendment protections become the more necessary when the targets of official surveillance may be those suspected of unorthodoxy in their political beliefs.
>
> *United States v. United States District Court for Eastern District of Michigan, Southern Division*, 407 U.S. 297 (1972).

7.      Here, in the context of the search warrant and the Government's supporting investigation, Mr. Baum was certainly viewed with suspicion because of his religious and political beliefs.  The various sources interviewed by the FBI stated that Mr. Baum suffered from Bipolar disorder and would fixate on his Muslim faith and Middle-East politics in discussions. He would attempt to convert people to Islam, he would sometimes offend people, and he would post about his beliefs on his Facebook account.  These activities are not criminal, and should not support a finding of probable cause that Mr. Baum was involved in the material support of terrorism.

8.      Additionally, the search warrant is overbroad.  The search warrant application states that Baum's "friending" of Yabroody shows "the possibility of recruitment and radicalization of Baum."  While speculative, even it that were true, it would support the seizure of communications only between Baum and Yabroody.  The warrant, however, authorizes the seizure of all communications, including private messages, between Baum and any other Facebook users.

9.      For these reasons, the information obtained as a result of the Facebook search warrant should be suppressed.

## II.  SUPPRESSION OF STATEMENTS

10.      The defense is seeking to suppress statements made by Mr. Baum to Customs and Border Protection Officer Jeffrey Ulrich at the Peace Bridge on May 13, 2014.  (*See* **Exhibit C**). Officer Ulrich interviewed Baum at the border-crossing when he returned to the United States to deal with the present charges.  During this interview, Mr. Baum made statements concerning his

international travel which relate to the charges in this case. Specifically, Mr. Baum recounted the various countries he had traveled to while receiving SSI benefits. Officer Ulrich did not advise Mr. Baum of his *Miranda* rights prior to questioning him, and interviewed him about his international travel despite the fact that Mr. Baum was represented by counsel on these charges.

11.     The Complaint in this case was signed on March 31, 2014, while Mr. Baum was in Casablanca, Morocco. As a result of the Complaint and arrest warrant, Mr. Baum was unable to renew his passport at the US Embassy in Morocco. On April 12, 2014, I was contacted by an attorney from the Council on American-Islamic Relations ("CAIR"), and that same day I began speaking with the U.S. Attorney's Office concerning Mr. Baum's case. At that time, I began representing Mr. Baum concerning this matter and over the following month I regularly communicated with Mr. Baum, his family, and the U.S. Government to arrange his return to Buffalo, NY to deal with these criminal charges.

12.     Officer Ulrich's interview of Mr. Baum was not a routine administrative matter—there was nothing routine about Mr. Baum's case. His return to the U.S. was a coordinated effort involving several Government agencies, the U.S. Attorney's Office, and representation by his attorney. The Government was advised when and where Mr. Baum would be entering the United States. Once the Government had identified Mr. Baum at the border crossing, there was no reason to interview him other than to try and obtain incriminating information to be used against him in his criminal case. The Government did not advise him of his *Miranda* rights, and proceeded to question him about his international travel—which is at issue in this case—without contacting his attorney. Permitting the Government to use the statements obtained from Mr. Baum would be a violation of his rights under the 5th and 6th

Amendments.  We respectfully request that the Court conduct a hearing on this matter and suppress Mr. Baum's statements.

### III. DISMISSAL / MERGER OF COUNTS 1, 2, and 4

13.    The Court should dismiss Counts 2 and 4 as multiplicitous of Count 1.  "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

14.    Here, Counts 1, 2, and 4 of the Indictment all charge that Mr. Baum misrepresented to the Social Security Administration ("SSA") whether he had been outside the country for more the 30 days, which allowed him to receive Supplemental Security Income ("SSI") benefits to which he was not legally entitled.  Each Count is premised on the singular crime of Mr. Baum not informing SSA during a phone call on December 19, 2013, that he had been outside the U.S. for more than 30 days.

Each of the statutes charged involves a misrepresentation to SSA, which Baum allegedly made on December 19, 2013, when he failed to disclose he had been outside of the United States for more than 30 days which would make him ineligible to continue receiving SSI benefits.

Count 1 charges a violation of 42 U.S.C. § 1383a(a)(2).  This statute provides:

> Whoever (2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to any such benefit, . . . shall be fined under Title 18, imprisoned not more than 5 years, or both.

Count 2 charges a violation of 42 U.S.C. § 1383a(a)(3).  This status provides:

> Whoever (3) having knowledge of the occurrence of any event

affecting (A) his initial or continued right to any such benefit . . . conceals or fails to disclose such event with an intent fraudulently to secure such benefit either in a greater amount or quantity than is due or when no such benefit is authorized . . . shall be fined under Title 18, imprisoned not more than 5 years, or both.

Count 4 charges a violation of 18 U.S.C. § 1001(a)(2), which provides:

Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be [fined and imprisoned, etc.]"

15.    The multiplicity of the offenses charged in Counts 1 and 4—each alleging the same false statement under differing statutes—is discussed in *United States v. Glenn* (2014 WL 3783933 (M.D. Tenn., July 31, 2014)).  There the District Court denied defendants motion to dismiss, but questioned whether there were unique statements charged in each count, and ultimately denied the motion without prejudice, finding that defendant had not shown prejudice. Here, it appears that the exact same misrepresentation is at the heart of Counts 1, 2, and 4.

While Count 2 arguably involves the additional element of "knowledge of the occurrence of any event affecting [eligibility for benefits]," this knowledge is effectively the same as the "materiality" elements of Counts 1 and 4.  The false statement is material only because it impacts Mr. Baum's eligibility to receive SSI benefits.

16.    While the language of the charged offenses is different, Counts 1, 2, and 4, are all premised on the same crime and are satisfied by the same elements as charged in the Indictment. Accordingly, we respectfully request that the Court dismiss Counts 2 and 4 as multiplicitous of Count 1.

## IV.    DISCOVERY AND INSPECTION

17.    The Government has provided extensive discovery to the defense.  Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A),(B),(D),(E),(F), & (G) the Defendant now moves to compel discovery of any items, or information to which the Defendant is entitled, but was not previously provided.  Specifically, we request the following:

      a.    A copy or inspection of any and all items seized on the day of Defendant's arrest;

      b.    Any and all audio and/or video recordings made in this case and any transcripts, draft or otherwise, prepared of those recordings;

      c.    Any and all photographs regarding the Defendant's arrest;

      d.    Disclosure of the names and identities of expert witnesses that the Government intends to call at trial, their qualifications, subject of testimony, and reports and the results of tests, examinations or experiments which are material to the preparation of Defendant's defense or which are intended for use by the Government in its evidence-in-chief at trial.

      e.    Pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure, the Defendant requests written notification of any evidence the Government intends to use at its case-in-chief that may, in any way, be subject to a motion to suppress in which the Defendant is entitled to discover pursuant to Rule 16.  Although the Government has provided extensive discovery, it is unclear exactly what evidence and statement it intends to use at trial.

18.    The Defendant moves for disclosure of the names, addresses and criminal records of all informants utilized by the Government in its investigation of this case.

## V. BILL OF PARTICULARS

19.    Pursuant to Fed. R. Crim. P. 7(f), the defense requests a bill of particulars setting forth the alleged false statement or misrepresentation made by Mr. Baum to SSA on December 19, 2013.  The discovery provided from SSA does not state exactly what Mr. Baum was asked, and what

he allegedly said or did not say.  The defense needs this information to prepare for trial.

## VI.  *BRADY* MATERIAL

20.     The Defendant moves for an Order compelling the Government to disclose all

potentially favorable evidence, including, but not limited to: statements, grand jury testimony,

witnesses, books, papers, reports, photographs, handwritten notes, synopses of statements made

by witnesses, or any other tangible items of evidence in the custody and control of the

Government, or any Governmental agency, or agents working with, or under the supervision of

the Government.  *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97

(1976); *United States v. Giglio*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959).

21.     Due process requires that the defense be given *Brady/Giglio* material in advance

of trial so that investigatory leads may be pursued in sufficient time to permit a full preparation

of the Defendant's case.  *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3  n.1 (2d Cir. 1974),

*cert. denied*, 420 U.S. 939 (1975); *United States v. Agajanian*, 852 F.2d 56 (2d Cir. 1988);

*United States v. Bejasa*, 904 F.2d 137, 140-141 (2d Cir. 1990); *Arizona v. Youngblood*, 109 S.Ct.

333 (1988); *Grant v. Alldredge*, 498 F.2d 376 (2d Cir. 1974); *United States v. Cobb*, 271 F.Supp.

159, 163 (S.D.N.Y. 1967).

22.     In this case, it is impossible, and indeed not required under *United States v.*

*Agurs*, *supra*, to make a specific request for all available *Brady* material.  Nevertheless, the

disclosure and production should include, but not be limited to, the following:

        a.     Any written or recorded statements, admissions or confessions made by
            any witness, and the name and address of any such individual, which may
            be exculpatory, non-incriminatory, or otherwise favorable to the
            Defendant, or any summaries, synopsis, notes, memoranda, or resumes

thereof, regardless of whether such statements are reduced to writing and regardless of whether the prosecution intends to use such statements at the trial herein;

b.   The name and address of any other witness who might have favorable evidence as to the Defendant, which are known, or which by the exercise of due diligence shall or should become known to the Government;

c.   Any notes, memoranda, summaries, reports, or statements of any kind prepared in connection with the investigation of this case which are in any way favorable to the defense including notes prepared by the Government or any of its agents in connection with either the review of documents or the interview or other conversations with witnesses or other individuals contacted in connection with this case;

d.   Any and all prior criminal records of any witnesses intended to be used in any fashion by the prosecution, or any other such information demonstrating the commission on their part, or participation therein, of any so-called "bad acts" or other instances of immoral or criminal conduct, or conduct indicating a lack of veracity;

e.   Any and all statements, memoranda or other similar notations or information which would in any way reflect inconsistent statements made by any witness contacted by the Government, or any such individual engaged in lying or other conduct calculated to conceal the truth or improperly reflect facts;

f.   Any information tending to indicate that information supplied by a particular document or witness contradicts or is contradicted by a different document or witness; and

g.   Any and all surveillance reports of the Defendant and any witness covering the period of time relevant to the offense charged which qualify as *Brady/Giglio* material.

23.   Counsel specifically reserves the right to make additional requests for the material covered above at the time this motion is argued, or at such other time as the existence of such materials shall become known to counsel for the Defendant, and it is respectfully requested that the prosecution be admonished that its duty under *Brady/Giglio* is a continuing one.

AO 72A
(Rev. 8/82)

-11-

**Timing of the Disclosure**

24.     These duties impose on the Government an obligation to make such disclosures

not only to aid the accused in his preparation for trial, but also in his determination of whether or

not to plead guilty.  As stated by the Second Circuit in *United States v. Avellino*, 136 F.3d at 255,

*citing Tate v. Wood*, 963 F.2d 20 (2d Cir. 1992):

> The government's obligation to make such disclosures is pertinent
> not only to an accused's preparation for trial, but also to his
> determination of whether or not to plead guilty.  The defendant is
> entitled to make that decision with full awareness of favorable
> material evidence known to the government.

25.     As such, this information should be disclosed immediately as well as all favorable

evidence discovered hereafter.


**VII.   MOTION FOR DISCLOSURE OF EVIDENCE PURSUANT
TO FEDERAL RULES OF EVIDENCE 404(b), 608 AND 609**


**Federal Rule of Evidence 404(b)**

26.     Pursuant to Federal Rules of Criminal Procedure 12(b)(4), (d)(1) and (2) and

Federal Rules of Evidence 104(a) and 404(b), the Defendant respectfully requests that the

Government notify the Defendant of any evidence that the Government contends would be

admissible under Fed.R.Evid. 404(b).


27.     In order to permit the Defendant the opportunity to file appropriate motions prior

to trial, he requests that he be fully apprised of "evidence of other crimes, wrongs, or acts" or

transactions involving the Defendant which are outside the scope of the indictment and which

the Government will seek to introduce to demonstrate "motive, or absence of mistake or

accident."  Fed.R.Evid. 404(b).

28.     The defense should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the Government asserts that admissibility rests.  By so notifying the defense in advance of trial, the Defendant can file appropriate motion(s) *in limine* prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

29.     The pretrial determination of this evidentiary question will serve the smooth operation of the trial, eliminate possible extraneous objections and assist both the Government and defense counsel in the presentation of evidence.

## Federal Rule of Evidence 608

30.     The Defendant also requests, pursuant to Rules 608 and 609, pretrial disclosure of any and all evidence the Government intends to use to impeach the Defendant's credibility if he should choose to testify.  In the event the Government intends to use such evidence, the Defendant requests a pretrial hearing to determine the admissibility of such evidence.

31.     Rule 608(b) allows use of specific instances of misconduct against a witness.  In the event the Government intends to use specific instances of misconduct against the Defendant if he testifies, it is requested that such instances be disclosed prior to trial.

## Federal Rule of Evidence 609

32.     Rule 609 of the Federal Rules of Evidence allows for use of certain prior convictions to impeach the credibility of the Defendant, should he testify at trial.  The defense

requests notice of any intent to use such information.

## VIII.  DISCLOSURE OF WITNESSES' STATEMENTS

33.     The Defendant moves for disclosure of witnesses' statements pursuant to 18

U.S.C. § 3500 ("*Jencks Act*") and Rule 26.2 of the Federal Rules of Criminal Procedure, the

Defendant is entitled to each witness statement after the witness has completed his or her

testimony on direct examination.

34.     The Defendant moves for an order requiring production of *Jencks Act* materials,

namely, all statements and reports in the possession of the United States which were made by

Government witnesses or prospective Government witnesses and which relate to the subject

matter about which those witnesses may testify, as per the *Jencks Act*, 18 U.S.C. § 3500, and

Rule 26.2, Federal Rules of Criminal Procedure.

        a.     The term "statements" shall include:

            i.     any written statement made by a witness and signed or otherwise
adopted or approved by him;

            ii.     stenographic, mechanical, electronic or other recording, or
transcriptions thereof, which are a substantially verbatim recital of
an oral statement made by a witness and recorded
contemporaneously with the making of such oral statement;

            iii.     a statement, however taken or recorded, or a transcription thereof,
if any, made by a witness to a grand jury;

            iv.     records of statements made to a Government agent which fairly
and fully reflect the statements made without distortion, *United
States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995);

            v.     Any and all rough notes of witness interview(s) taken or obtained
in any investigation of the Defendant including federal, state, local,
and other investigations whether or not the contents thereof have

been incorporated in official records;

vi.    Any notes and memoranda made by Government counsel during the interview of any witness(es) intended to be called by the Government in their direct case, *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and

vii.    All surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

**Timing of Disclosure**

35.    The Defendant seeks production of the statements prior to trial for the purposes of judicial economy, to expedite discovery and the trial of this case, and to avoid potential problems on the issue of whether all material has been tendered pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  Although a District Court may not ordinarily compel disclosure of *Jencks* material prior to the conclusion of a witness' direct examination, early disclosure of *Jencks* material obviates trial interruptions and permits defense counsel to study the disclosures. *See United States v. Campagnuolo*, 592 F.2d 852, 858 n.3 (5th Cir. 1979).  Courts have on a case-by-case basis, invoked their discretion to require production of *Jencks Act* statements in advance of the trial so that unnecessary delays will not take place during the course of the trial. *See United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974); *United States v. Feola*, 651 F. Supp. 1068, 1139-40 (S.D.N.Y. 1987).

## IX.  PRESERVATION OF ROUGH NOTES

36.    Defendant moves for an order of this Court requiring all federal, state or local agents and officers who participated in the investigation of the Defendant to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.  This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio*, the *Jencks Act* (18 U.S.C.

AO 72A
(Rev. 8/82)

-15-

§ 3500), Rule 26.2 of the Federal Rules of Criminal Procedure, and/or the Fifth and Sixth Amendments of the United States Constitution.

37.     The defense also requests that this Court direct the Government to preserve notes made by Government witnesses, including state and local authorities, in the event they later became discoverable as either the Defendant's statement, or that of another witness. *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995).

## X.   FURTHER RELIEF

38.     The Defendant respectfully reserves the right to make further and additional motions, or submit additional briefing, which may be necessitated by the Court's rulings on the relief sought herein.

39.     Additionally, the Defendant respectfully reserves the right to make further motions concerning the seizure of an Ipad from Mr. Baum when he entered the United States on May 13, 2014.  The information concerning this Ipad was just recently turned over to the defense and is presently being reviewed by a defense computer forensic expert.  The defense will promptly file any motions relating to this evidence.

40.     The specific requests contained in these motions are not meant to limit or preclude future requests by the Defendant for further relief from this Court as appropriate.

AO 72A
(Rev. 8/82)

41.     The Defendant requests that this Court grant such other and further relief as is just

and proper.

**DATED**:        Buffalo, New York, March 27, 2015.

Respectfully submitted,

**/s/Brian P. Comerford**
Brian P. Comerford
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
brian_comerford@fd.org
Counsel for Defendant Ari Elias Baum

**To:**      Frank T. Pimentel
Assistant United States Attorney

AO 72A
(Rev. 8/82)