UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                                **14-CR-164-WMS**

                v.                                                    **DEFENDANT'S REPLY**

ARI ELIAS BAUM,

                Defendant.
_____

The defense submits the following Reply in support of Defendant's Omnibus Motions (Docket No. 38).

**I.       SUPPRESSION OF FACEBOOK EVIDENCE**

       **A.       Lack of Probable Cause**

The search warrant lacked probable cause because it was based primarily on religious and political speech protected under the First Amendment; extensive international travel; and Mr. Baum's "friending" of a suspected terrorist on Facebook. As argued in Defendant's Motion to Suppress, there was inadequate evidence to support a finding of probable cause that Mr. Baum was providing material support to terrorism.

       **B.       Overbreadth**

The search warrant was overbroad because it permitted the seizure of all communications on Baum's Facebook account, and was not limited to those communications with the suspected

terrorist "Yabroody."  Moreover, there was no evidence that Baum had ever communicated with Yabroody, only that he was one of over a thousand of Baum's Facebook "friends."  Even if the Court finds there was probable cause, the warrant should have been limited to communications between Baum and Yabroody, not Baum and everyone he communicated with on Facebook.

The Supreme Court—in an opinion that admittedly pre-dates Facebook—has discussed the issue of overbroad search warrants in the realm of communications:

> We recognize that there are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable. In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the "seizure" of telephone conversations. **In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.**

*Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737 (1976) (emphasis added).

In Baum's case, the search warrant was substantially overbroad and did not "minimize[] unwarranted intrusions upon privacy."  On the contrary, it authorized the seizure of all of Baum's Facebook communications, and extensive other information retained on his account. The following is an excerpt of some of the items authorized to be seized in the search warrant:

> "All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers, and, for any pertinent Facebook groups . . . a list of users currently registered to the group, and group contact info, including all contact information for the creator and/or administrator of the group and a PDF of the current status of the group profile page . . . all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them . . . status updates; links to videos, photographs, articles, and other items; Notes; wall postings, friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past

> event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications . . . . All other communications and messages made or received by the user, including all private messages, Facebook chat messages, and pending "Friend" requests . . . . All IP logs, including all records of the IP addresses that logged into the account."

(Search Warrant, Docket No. 38-1, p. 2, Exhibit A to Defendant's Motion to Suppress).

Here, the Government sought a search warrant for *all* of Baum's Facebook communications to investigate whether he was providing support to terrorism, specifically an individual identified as "Yabroody." The Court authorized a seizure of all of Baum's Facebook communications, and extensive other information from his Facebook account, which was not limited to communications with Yabroody. This seizure ultimately yielded incriminating messages between Baum and his family members concerning his overseas travel and eligibility to receive Social Security Benefits—in no way related to terrorism. The probable cause here did not support the seizure of communications between Baum and his family members, this evidence should be suppressed.

### C.  **Good Faith Exception**

The Government asserts that there was probable cause and contends that even if the warrant was not supported by probable cause, the FBI reasonably relied on the warrant and the good faith exception should apply.

The issuance of a search warrant based primarily on constitutionally protected activities violates Mr. Baum's rights under the First and Fourth Amendments. Moreover, because this case implicates Mr. Baum's First Amendment right, the defense asks the Court to find that the good

-3-

faith exception asserted by the Government should not apply.

The good faith exception is premised on the idea that "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful" there is no police misconduct to deter, and therefore no reason to exclude the evidence. *See Davis v. United States*, 131 S.Ct. 2419, 2427 (2011); *Unites States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (affirming that "[t]he essential rationale underlying the good faith exception is that the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'")

Accordingly, under the good faith exception, "the exclusionary rule does not apply when the police conduct a search in "objectively reasonable reliance" on a warrant later held invalid" *Davis*, 131 S.Ct. at 2428 (citing Leon, 468 U.S., at 922).

Baum's case is different than the typical Fourth Amendment case, however, because the probable cause underlying the search warrant consists largely of religious and political expression that is protected under the First Amendment.  Applying the good faith exception here would not only infringe on Baum's First Amendment rights to express his religious and political beliefs, it would have a chilling effect on others intending to express similar religious and political speech that could make them a target of government interest, and possibly a search warrant.  These First Amendment concerns are not addressed by the good faith exception analysis, therefore, the Court should not apply the good faith exception to permit the seizure of the Facebook evidence in this case.

## II.   SUPPRESSION OF STATEMENTS

The defense continues to move for the suppression of Baum's statements made at the Peace Bridge on May 13, 2014.

### A.   Miranda

The interview at the Peace Bridge on May 13, 2014, was a custodial interrogation.  It was not, as the Government asserts, routine questioning.  Unlike *Calzada*, the case relied upon by the Government, Baum was not simply a random traveler identified by a border agent as someone with an outstanding warrant.  *See United States v. Calzada,* 653 F.3d 144 (2d Cir. 2011).  Rather, Baum's surrender to US Officials was orchestrated for weeks in advance.  The Government knew when and where he was entering the United States and arrangements had been made to facilitate his travel back to the United States.  The Agent's questioning of Baum was not "routine," the only logical purpose of asking him about his past travel was to obtain admissions that could be used against him in his criminal case.  Mr. Baum was subject to custodial interrogation without the protections set forth in *Miranda*, his statements should be suppressed.

### B.   Sixth Amendment

In early April of 2014, the U.S. Attorney's Office contacted me concerning Mr. Baum's case.  The Government wanted Mr. Baum to return to Buffalo to deal with his criminal charges.  At that time, I began speaking with Mr. Baum and his family concerning the pending arrest warrant and the logistics of returning to Buffalo.  In the month preceding Mr. Baum's return to the United States, I had several communications with the U.S. Attorney's Office concerning Mr.

Baum's situation and his return to the United States. As far as I am aware, the Government had no direct communications with Baum during this time period. All communications were through me, Baum's attorney.

The Government now argues, in response to defendant's motion to suppress Baum's statement, that I was not Baum's attorney until I was formally assigned by the Court. The Government cannot have it both ways. The Government cannot ask this office to act as Baum's attorney to communicate with him and facilitate his return to the U.S. to deal with his criminal case, and then later argue that we were not Baum's attorney because we were not formally assigned. The Government should not be permitted to pick-and-choose when this office is someone's attorney based on what is convenient to Government interests at the time.

The issue here is not whether Mr. Baum was *entitled* to counsel prior to his appearance in Court; rather, the issue is whether Mr. Baum *had* counsel. And he did—the Government communicated with me for over a month prior to Mr. Baum's return from Morocco to the United States. We discussed the logistics of his return, travel document issues, which flight he would be traveling on, and whether he would likely be detained upon his arrival. I asked several questions that Mr. Baum had concerning the status of case and whether it could be resolved. There was no question that I was acting as Mr. Baum's attorney during this time. Accordingly, the Court should find that Mr. Baum did have an attorney when he was questioned by agents on May 13, 2014, and that his statements should be suppressed.

### III.   DISMISSAL/MERGER OF COUNTS 1, 2, and 4

Counts 2 and 4 are multiplicitous of Count 1. Counts 1, 2, and 4, each allege the same crime: that Baum misrepresented to the SSA that he had been outside the country for more than

30 days, which allowed him to receive SSI benefits to which he was not entitled. The Government relies on *United States v. Josephberg*, where the Second Circuit held that a pretrial dismissal of multiplicitous counts was premature. Notably, the *Josephberg* Court did not decide whether the Counts were in fact multiplicitous. We concede that under J*osephberg*, our argument as to multiplicity in the present case is premature. However, the defense maintains that these counts are multiplicitous, and that if Mr. Baum is convicted on more than one of these counts, the Double Jeopardy Clause must prevent a cumulative punishment.

**IV.     DISCOVERY**

The Government has provided discovery in compliance with Rule 16. The defense continues to seek an expert witness disclosure (if the Government intends to call any expert witnesses), and 3500/*Jencks* material which we ask be provided pursuant to a pretrial order set by the District Court.

**V.      BILL OF PARTICULARS**

The Defense continues to seek a bill of particulars setting forth what exactly Mr. Baum said, or did not say during the interview with a representative of SSA on December 19, 2013. This interview was not recorded, but appears to have been transcribed in some form in paperwork maintained by the SSA. Because these records are partially encoded, the defense is unable to ascertain what, if anything, was transcribed concerning the December 19, 2013 interview. For this reason, the defense seeks particularization of what exactly Mr. Baum said or did not say during the interview. In the alternative, the defense seeks additional discovery that would explain what the various codes in the Social Security records mean and what specifically

pertains to the December 19, 2013 interview.

### VI.   *BRADY* MATERIAL

The defense continues to seek any material to which it is entitled under *Brady v. Maryland*, 373 US 83 (1963).

### VII.   RULES 404(b), 608, 609

The defense continues to seek disclosure of evidence to which it is entitled under Federal Rules of Evidence 404(b), 608, and 609.

### VIII.   WITNESSES' STATEMENTS

The defense continues to seek disclosure 3500/*Jencks* material and asks that this be provided pursuant to a pretrial order set by the District Court.

### IX.   PRESERVATION OF ROUGH NOTES

The Government has responded that it has no objection to the preservation of notes taken during the investigation of the case.

### X.   FURTHER RELIEF

The defense reserves the right to make additional motions that are necessitated by the Court's rulings.  Additionally, the defense reserves the right to make additional motions concerning an Ipad that was seized from Mr. Baum when he entered the United States on May 13, 2014.  A forensic image of the iPad was turned over to the defense shortly before motions were due in this case.  The defense is awaiting review of this discovery by a defense computer

forensic expert, and does not, at the present time, anticipate any motions based on this discovery.

## XI. GOVERNMENT'S CROSS DISCOVERY DEMAND

The defense will comply with the obligations set forth in Rule 16(b).

**DATED:** Buffalo, New York, April 24, 2015.

Respectfully submitted,

**/s/Brian P. Comerford**
Brian P. Comerford
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York   14202
(716) 551-3341
brian_comerford@fd.org
Counsel for Defendant Ari Elias Baum

**TO:** Frank T. Pimentel
Assistant United States Attorney