IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      -v-                                                                                           14-CR-164

ARI ELIAS BAUM,

                    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S JUNE 15, 2015
LETTER BRIEF CONCERNING THE FACEBOOK SEARCH WARRANT**

The United States of America, through its attorneys, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Frank T. Pimentel, Assistant United States Attorney, of counsel, hereby files its response to defendant's letter brief submitted to the Court on June 15, 2015 (Docket Entry ("DE") 47).

### I.  FACTUAL BACKGROUND

In April 2013, the Federal Bureau of Investigation ("FBI") learned that the defendant was outside of the United States.  (DE 1.)  In August 2013, the defendant returned to the United States.  (DE 1.)  The FBI, however, had developed concerns about possible ties to terrorism that it seemed the defendant might have.  Accordingly, on November 21, 2013, FBI Special Agent Randall E. Garver applied for and obtained a search warrant from the Honorable H. Kenneth Schroeder, Jr., for the defendant's Facebook account.  (See DE 38-1 at 1-32.)

On December 19, 2013, the defendant completed an SSI benefits redetermination over

the phone. During the interview, he stated that since March 1, 2013, he had not been outside the United States for a calendar month or 30 consecutive days. (DE 1.) As described above, this was not true.

On January 1, 2014, the defendant again left the United States. (DE 1.) A Criminal Complaint was filed and an Arrest Warrant issued on March 31, 2014, concerning the defendant's December 19, 2013 statements to the SSA. (DE 1, 8.) In September 2014, the defendant was charged in a four-count Indictment. (DE 16.) Counts 1, 2, and 4 revolve around false statements that the defendant made on December 19, 2013, both affirmatively and by way of non-disclosure of required information, concerning his continued eligibility for Supplemental Security Income ("SSI") benefits. Count 3 alleges theft of Government property, SSI benefits, between April 21, 2013, and on or about August 13, 2013.

## II.   ARGUMENT

**A.   The Good Faith Exception Applies**

In his letter brief, the defendant argues that, pursuant to United States v. Ganias, 755 F.3d 125 (2d Cir. 2014), in the event that the Court were to find the warrant invalid for lack of probable cause, the good-faith exception to the exclusionary rule should not apply. See Herring v. United States, 555 U.S. 135, 142 (2009) ("When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant.") (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). However, subsequent to submission of his letter brief, the defendant advised the Court that Ganias has now been scheduled for an *en banc* rehearing by the Second Circuit rendering its validity uncertain.

Notwithstanding the foregoing and in any event, Ganias is distinguishable from the present case. There, in executing the search warrant, investigators seized and retained files *beyond the scope of the search warrant*. And the relevant retention period of the records that had been seized beyond the scope of the warrant was *20 months*. None of that happened in the present case. Here, all of the Facebook account evidence was seized in accordance with Magistrate Judge Schroeder's search warrant; *agents did not obtain information beyond the scope of that warrant*. Second, unlike in Ganias, the government acted on the information obtained from the search warrant promptly. The search warrant issued November 21, 2013, and the defendant was charged by Criminal Complaint four months later, on March 31, 2014, substantially less than the 20 months at issue in Ganias. For these reasons, even if Ganias were controlling, it is inapposite.

B.   Alleged "Overbreadth" Does Not Defeat the Good-Faith Exception

Assuming for the sake of argument that Magistrate Judge Schroeder's search warrant was overbroad – which it was not, for the reasons given in the government's response to the motion to suppress (see DE 39 at 3-8) – this "overbreadth" would not defeat application of the good-faith exception to suppression. More to the point, the defendant fails to cite even one case in support of this proposition. In contrast, as the court stated with respect to a Facebook search warrant in the "Silk Road" case, United States v. Ulbricht, 14-cr-68 (KBF), 2014 U.S. Dist. LEXIS 145553, *42 n. 12 (S.D.N.Y. Oct. 10, 2014):

> Even if this Court were to find that the magistrate judges who issued the warrants erred by approving the clauses to which Ulbricht objects as overly broad, the application of the exclusionary rule here would still be inappropriate, as the law enforcement agents who executed the searches and seizures were entitled to rely in good faith upon the magistrate judges' probable cause determinations, and the warrant applications here were not so "lacking

3

in indicia of probable cause" nor so "facially deficient" that reliance upon the warrant was "entirely unreasonable." [United States v. Leon, 468 U.S. 897, 921-23 (1984)] (quotation omitted).

**C.   Magistrate Judge Schroeder's Search Warrant Was Not a "General Search Warrant"**

Next, the defendant argues that the Facebook warrant was a "general warrant," which, as such, defeats application of the Leon exception. This argument fares no better than the previous argument.

The "general warrants" that the Fourth Amendment was adopted to protect against were "indiscriminate searches and seizures" by police officers with "unbridled discretion to rummage at will among a person's private effects." See United States v. Galpin, 720 F.3d 436, 445 (2d Cir. 2013). Such warrants bear no resemblance to the search warrant issued by Magistrate Judge Schroeder in the present case. To begin with, the warrant application in the present case set forth a multitude of facts supporting probable cause to believe that the defendant was using Facebook to materially supporting terrorism.

- On June 27, 2013, Source 4 told SA Garver that Source 4 was Facebook "friends" with the defendant and that Source 4 had noticed that the defendant's posts had become more "extreme, aggressive, and concerning." Source 4 thought that the defendant could be a danger, a threat to national security. Source 4 also explained that the defendant and Source 4 had engaged in a Facebook exchange in which the defendant ultimately replied "careful of your tongue, denier," to Source 4, which Source 4 interpreted as a reference to "denial" of Islam. (DE 38-1 ¶ 31.)

- On July 10, 2013, Source 4 told SA Garver that Source 4 had recently sent the defendant a private message on Facebook seeking clarification about a message from the defendant saying that Source 4 would someday submit to Islamic law.

- On July 19, 2013, the defendant – whose Facebook page at the time was open to the public – shared a photo of a man sitting at a table holding an AK-47 speaking to a woman.  The two were wearing military attire with three persons behind them wearing black robes and carrying rifles.  The photo was captioned, "husband and wife fighting for islam!!," with the defendant adding the descriptive comment, "the most beautiful photos I have ever seen!!!"  (DE 38-1 ¶ 34.)

- On the following 2013 dates, the defendant listed the following locations of his travel on Facebook:
    - May 9 and 12 – Morocco
    - May 27, 29, and 31 – Egypt
    - June 14, 21, 23, 27, July 8, 10 – Turkey
    - July 13, 15, 17, 18, 20, 22, 25, August 3 – United Arab Emirates

- On August 12, 2013, Source 4 informed the FBI that the defendant was attempting to return to the United States but that he was still in France because he was on the no-fly list.  Source 4 added that the defendant's Facebook status described himself as "too dangerous to fly."  (DE 38-1 ¶ 33.)

- On August 13, 2013, the defendant returned to the United States at JFK Airport and, during his immigration inspection interview, first said that he had left the United States in March 2013 to study in Morocco but later backtracked and said that he had not studied in Morocco.  He also stated that he had wanted to travel to Yemen but

could not "get in." He confirmed that on August 4 he had learned that he was on the "no fly" list. (DE 38-1 ¶ 36.)

- In September 2013, the FBI learned that the defendant had a Facebook "friend" known as "Sniper from Yabroud (Abu Malik)." They ascertained that Yabroud is a town in Syria. This person listed his work and education as, among other things, "Jihad for the cause of God." The individual also "liked" the Islamic State of Iraq and Levant (*i.e.* ISIL). (DE 38-1 ¶ ¶ 37-39.)

- In mid-September 2013, the defendant abruptly restricted the content on his Facebook page. (DE 38-1 ¶ 47.)

Thus, Magistrate Judge Schroeder had more than enough probable cause to issue the search warrant for the defendant's Facebook account.

Moreover, putting aside probable cause, the defendant lacked *any* reasonable expectation of privacy as to much of his Facebook content. "Whether the Fourth Amendment precludes the Government from viewing a Facebook user's profile absent a showing of probable cause depends, *inter alia*, on the user's privacy settings. When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment." United States v. Meregildo, 883 F.Supp.2d 523, 525 (S.D.N.Y. 2012). Accordingly, any postings the defendant made on his Facebook account up to mid-September 2013 were simply not protected by the Fourth Amendment.

Likewise, when the defendant disseminated posts to his Facebook "friends," any legitimate expectation of privacy that he had ended because the "'friends' were free to use the information however they wanted." Id. at 526; see Smith v. Maryland, 442 U.S. 735, 743-44

(1979) (no legitimate expectation of privacy in information one voluntarily turns over to third parties).

Finally, unlike the search warrant in the present case, which was particularly addressed to the defendant's Facebook account and was based on an investigation concerning one specific federal criminal statute, Galpin, which the defendant relies on, concerned a computer hard drive – which by its nature contains boundless personal and private information – that was searched in support of indiscriminate violations of federal and state law. The particularity problem in Galpin was palpable; here it is indecipherable.

For these reasons, the "general warrant" argument fails.

### D. A Severability Hearing Is, At Best, Premature

The defendant seems to argue that because "communications between Baum and his family" had no conceivable relation to the material support of terrorism that was under investigation, such communications should be suppressed. The primary problem with this argument is that the defendant has not identified which communications he has in mind. Without narrowing down the field of evidence that he wants suppressed, the Court (and the government) would be left with a putative hearing over an undifferentiated mass of Facebook communications all having various and sundry expectations of privacy and possible connections to the support of terrorism that was under investigation. For example, anything posted on the defendant's Facebook page prior to the change in his privacy settings had no expectation of privacy. Likewise, if the defendant informed his family that he was in one overseas location as opposed to another, the location might have bearing on whether it was reasonably related to a support-of-terrorism investigation. Accordingly, even accepting the

defendant's argument on its own terms, he has not sufficiently set forth with enough specificity what particular Facebook evidence he wants suppressed in the context of considering the requested severability hearing. As a result, the Court should deny the request.

### III. CONCLUSION

The government respectfully requests that for the foregoing reasons, the defendant's motion to suppress should be denied.

DATED:    Buffalo, New York, June 29, 2015.

                                        WILLIAM J. HOCHUL, JR.
                                        United States Attorney

BY:    s/FRANK T. PIMENTEL
       Assistant U.S. Attorney
       U.S. Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       (716) 843-5868
       Frank.T.Pimentel@usdoj.gov