# Federal Public Defender's Office
## Western District of New York

Marianne Mariano
**Federal Public Defender**
marianne_mariano@fd.org

Brian P. Comerford
**Assistant Federal Public Defender**
brian_comerford@fd.org

300 Pearl Street, Suite 200
Buffalo, New York 14202

716-551-3341
Fax: 716-551-3346

Rochester Office
28 East Main Street
First Federal Plaza, Suite 400
Rochester, New York 14614
585-263-6201
585-263-5871-Fax

Reply to: Buffalo

June 15, 2016

Honorable Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

    RE:    *United States v. Ari Baum*
             14-CR-164-WMS

Dear Honorable Judge McCarthy:

      This supplemental letter brief is filed in response to the Court's June 8, 2016 text order (Dkt. No. 62) and articulates Mr. Baum's position regarding *United States v. Ganias*, -- F.3d --, 2016 WL 3031285 (2d Cir. 2016) (*en banc*). Mr. Baum contends, *infra*, that *Ganias* has no impact on his previously filed motion to suppress (Dkt. Nos. 38, 42, and 47) and does not obviate the need for an evidentiary hearing.

      In *Ganias*, the government, pursuant to a search warrant issued in 2003 in connection with a criminal investigation of Ganias's clients, seized "mirror images" of Ganias's computer hard drives. 2016 WL 3031285 at *1-3. The copied hard drives included Ganias's personal files, which were not within the scope of the 2003 warrant. *Id*. at *2. The government also seized conventional paper files, and in 2005, material from those files led government agents to suspect Ganias himself, and not just his clients, of criminal activity. *Id*. at *5. Based on the suspicious printed materials, in 2006 government agents applied for, and were issued, a warrant to search the mirror drives again, this time for inculpatory evidence pertaining to Ganias personally. *Id*.

      The government's investigation led to Ganias's indictment, after which he moved to suppress the evidence discovered by the government pursuant to the 2006 warrant. *Id*. at *6. The district court denied the motion, holding that neither government's pre-2006 warrant retention of Ganias's personal digital files, nor its post-2006 warrant search of those files, violated the Fourth Amendment. *Id*. On appeal, a panel of the Second Circuit disagreed, finding that the retention and search violated Fourth Amendment, and ordering suppression. *Id*. The Second Circuit then elected to rehear *Ganias's* case *en banc*. *Id*.

*En banc*, the Second Circuit declined to reach the issue of whether the retention and search of the copied hard drives violated the Fourth Amendment, deciding the case instead on the narrow ground that the government acted in good faith when it relied on the 2006 warrant.  *Id*. at *1, *6, and *16; *see also Id*. at *20 (Lohier, J., and Pooler, J. concurring) (emphasizing that the only binding holding of the *en banc* case pertains to good faith); *Id*. at 20-32 (Chin, J., dissenting) (objecting to the majority's failure to decide the substantive Fourth Amendment issues, and arguing that Ganias's Fourth Amendment rights were violated in bad faith).

Specifically, the Second Circuit held that the government's reliance on the 2006 warrant was objectively reasonable for three reasons.  First, it noted that the government disclosed its protracted seizure of Ganias's personal files, as well as all the pertinent information about its investigation to that point, to the magistrate from whom it sought the 2006 warrant. *Id*. at *19. Second, the Second Circuit opined that the government had little reason to believe that, under then-existing law, its protracted retention of Ganias's personal files violated the Constitution. *Id*. at 19. Third, the *Ganias en banc* Court found that the government acted reasonably throughout its investigation by, *inter alia*, keeping its searches within the authorized confines of the 2003 and 2006 warrants, by seeking warrants in the first place, and by disclosing all pertinent facts to the issuing magistrates when it did so. *Id*. at 20.

Mr. Baum's case is readily and materially distinguishable from *Ganias*.

First, unlike in *Ganias*, here the government agents did not "carefully limit[ed] their search"[1] to materials related to material support for terrorism, the ostensible subject of their investigation; rather, although the exact facts cannot be determined without an evidentiary hearing, it appears that FBI agents, and investigative agents of the Social Security Administration, rummaged through all of Mr. Baum's Facebook files or conducted a targeted search of those files for evidence of a Social Security fraud offense after developing a suspicion that Mr. Baum might have gotten benefits to which he was not entitled.  Thus, the government here did not respect the confines established by the warrant, which permitted it to search only for evidence of terrorism-related offenses.

Second, unlike in *Ganias*, when it became apparent that the digital files in its possession might contain evidence of an offense not contemplated by the original warrant, the government here did not promptly apply for a second warrant to search for evidence of that newly suspected offense. Unlike *Ganias*, the government here never disclosed all of the pertinent facts regarding its seizure and search of Mr. Baum's personal files, and of its investigation generally, to a neutral magistrate for a determination of whether its behavior violated the Fourth Amendment, or a finding that further searches of Mr. Baum's files for evidence of a Social Security fraud offense were supported by probable cause.[2]

---

[1] *Ganias*, 2016 WL 3031285 at *4.
[2] Again, the pertinent facts are undeveloped and so an evidentiary hearing is needed to, among other things, determine when and how the decision to exploit the seized materials for use in an

Third, unlike in *Ganias*, here there was substantial existing legal authority notifying the government that its protracted seizure and search of Mr. Baum's personal Facebook files violated the Fourth Amendment. Seizures and searches conducted pursuant to facially overbroad warrants are, of course, objectively unreasonable. *See Groh v. Ramirez*, 540 U.S. 551, 559-60 (2004) ("The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional"). And, importantly, seizures and searches ostensibly conducted pursuant to a warrant, but in fact used to uncover evidence of a crime not specified in the warrant, are also contrary to well-established law. *See, e.g.*, *Dalia v. United States*, 441 U.S. 238, 255 (1979) (Fourth Amendment requires police to demonstrate that evidence to be sought will aid in a particular apprehension or conviction for a particular offense) (internal citation omitted); *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (warrant must identify specific offense for which probable cause to search has been demonstrated); *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) (objectively unreasonable for officer to rely on warrant describing probable cause to suspect child molestation to search for evidence of child pornography); *United States v. Carey*, 172 F.3d 1268, 1274-76 (10th Cir. 1999) (objectively unreasonable for police to rely on warrant authorizing computer search related to drug trafficking to search for evidence of child pornography).

The distinctions drawn between *Ganias* and Mr. Baum's case, *supra*, are not exhaustive; an evidentiary hearing may well reveal additional, salient differences. But even the listed distinctions are sufficient to show that on the present record the government cannot prevail, as it did in *Ganias*, by relying on the good faith exception. For that reason, and because the *Ganias en banc* decision never reached the underlying Fourth Amendment issues raised by Ganias and implicated here,[3] this Court must hold an evidentiary hearing on Mr. Baum's motion to suppress.

---

investigation unrelated to terrorism was made, and why no effort was expended to seek a warrant at that point. *See United States v. Leon*, 468 U.S. 897, 911 (1984) ("…assessment of the flagrancy of the police misconduct" is an important step in determining whether to order suppression); *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) ("Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble").

[3] Mr. Baum has, *inter alia*, argued that the government's behavior violated his right to be free from unreasonable seizures and searches because: (1) there was no probable cause to support the warrant (Dkt. Nos. 38 at 4, 42 at 1), (2) the search warrant issued based on suspicions about Mr. Baum's religious and political beliefs in violation of the First Amendment (Dkt. No. 38 at 4-5), (3) the search warrant was overbroad (Dkt. Nos. 38 at 5, 42 at 1-3), (4) the retention and use of evidence discovered pursuant to the warrant in an unrelated criminal investigation violated the Fourth Amendment (Dkt. No. 47 at 1-2), (5) it was impermissible for the government to retain and search Mr. Baum's Facebook files for evidence of a crime not specified in the warrant (Dkt. No. 47 at 1-2), and, (6) the warrant authorized a prohibited general search (Dkt. No. 47 at 3-4). Many of these arguments for suppression also support Mr. Baum's contention that the good faith exception does not excuse the government's conduct. *See, e.g.*, Dkt. No. 42 at 4 (objectively unreasonable for government to rely on warrant granted largely on the basis of descriptions of

        Respectfully submitted,

        **/s/Brian P. Comerford**
        Brian P. Comerford
        Assistant Federal Public Defender
        Federal Public Defender's Office
        300 Pearl Street, Suite 200
        Buffalo, New York   14202
        (716) 551-3341; 551-3346 (fax)
        Brian_comerford@fd.org
        *Counsel for Defendant Ari Baum*

BPC:js

---

constitutionally safeguarded religious and political expression); Dkt. No. 47 at 1-4 (objectively unreasonable for government to rely on facially overbroad warrant authorizing a general search, rather than obtaining a second warrant specific to the new offense it wished to investigate). These arguments are unaffected by the *en banc* decision in *Ganias*, and can only be fairly and adequately considered after an evidentiary hearing and oral argument.