IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -v-                                                        14-CR-164

ARI ELIAS BAUM,

                Defendant.

---

**GOVERNMENT'S REPLY MEMORANDUM CONCERNING THE COURT'S
"GOOD FAITH" HEARING**

The United States of America, through its attorneys, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, and Frank T. Pimentel, Assistant United States Attorney, of counsel, hereby files this memorandum in reply to defendant Baum's post-hearing memorandum filed on January 17, 2017 (DE 87).

**I.    BACKGROUND**

In September 2014, defendant Baum was charged in a four-count Indictment. (DE 16.) Counts 1, 2, and 4 revolve around false statements that Baum made, both affirmatively and by way of non-disclosure, concerning his continued eligibility for SSI benefits while being outside the United States for a calendar month or 30 consecutive days since March 1, 2013. Count 3 alleges theft of Government property, SSI benefits, between April 21, 2013, and on or about August 13, 2013.

Baum moved to suppress evidence that the FBI obtained as the result of a Search Warrant issued by the Honorable H. Kenneth Schroeder, Jr., on November 21, 2013, directed

to Baum's Facebook account. Baum argues that the search warrant was not supported by probable cause and was overbroad. (DE 38 ¶ 3.) Based on Baum's motion, this Court ordered an "evidentiary hearing to address the government's reliance on the good-faith exception of United States v. Leon, 468 U.S. 897 (1984), . . . limited to whether the agents acted reasonably in relying on the November 21, 2013 search warrant for defendant's Facebook account ([38-1], pp. 1-32 of 33) in conducting their search which led to the discovery of the private messages defendant seeks to suppress." (DE 73 (Text Order of August 12, 2016).)

As set forth in the government's initial post-hearing memorandum, the hearing was conducted on September 27, 2016, and the parties' initial memoranda do not reveal any factual disagreements. In particular, the motion to suppress concerns an April 7, 2013, e-mail exchange via Facebook in which Baum wrote to R. Bruce Baum (defendant Baum's father), "life is cheaper here but I will lose the SSI eventually if I stay here because they will find out that I am out of the county [sic]," followed immediately by "country." Baum's father responded, "True. Any possibility of finding work."[1]

## II. ARGUMENT

A. The Search and Seizure of the Relevant Facebook Messages Was Conducted Pursuant to a Lawful Search Warrant and Fed. R. Crim. P. 41

Section I of Baum's post-hearing memorandum amounts to a dispute over the scope

---

[1] As previously explained, Baum did not have a reasonable expectation of privacy for Fourth Amendment purposes of this completed e-mail exchange. "'[A] person lacks any 'expectation of privacy in transmissions over . . . e-mail that have already arrived at the recipient.'" United States v. Lustyik, 57 F.Supp.3d 213, 223 (S.D.N.Y. 2014) (quoting United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004)); see also United States v. Knoll, 16 F.3d 1313, 1321 (2d Cir. 1994) ("[W]hen one party relinquishes control of a letter by sending it to a third party, the reasonableness of the privacy expectation is undermined.").

of the November 21, 2013 Search Warrant issued by the Honorable H. Kenneth Schroeder, Jr., on application of FBI Special Agent Randall E. Garver, who worked in consultation with AUSA Paul Campana. (DE 81 at 11-16; see Gov't Exs. 1-2 from 9/27/16 Hr'g.) On one hand, Baum seems to concede the propriety of the Search Warrant both as to probable cause and mechanics. (See DE 87 at 4).[2] And, indeed, there is no question that this Search Warrant was proper. See, e.g., United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990) ("In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items."); United States v. Scully, 108 F. Supp. 3d 59, 92 (E.D.N.Y. 2015) ("In the Court's view, '[b]y specifically identifying the statutes and conduct that gave rise to the search and seizure, the Search

---

[2] One portion of Baum's concession is unclear inasmuch as it mischaracterizes the "search" aspect of what the Search Warrant authorized. Baum writes:

> Judge Schroeder found that the government had demonstrated probable cause to believe that violations of 18 U.S.C. § 2339A, or "Providing Material Support to Terrorists," were occurring (Doc. 38-1 at 1-3). The warrant described the place to be searched generally as the Facebook account of Ari Baum, and by incorporation of Attachment A **provided a laundry list of areas of the account to be searched, including "all private messages, Facebook chat messages" that "would constitute Providing Material Support to Terrorists"** (Doc. 38-1 at 2-3). Finally, the warrant directed the seizure of any information constituting "Providing Material Support to Terrorists" (Doc. 38-1 at 3.)

(DE 87 at 4 (emphasis added).) This description is something of a sleight-of-hand. In fact, the Search Warrant directed Facebook, in relevant part, to "isolate" "**all** private messages [and] Facebook chat messages" of Baum's and provide them to "[l]aw enforcement personnel" for "review . . . to determine the information to be seized by law enforcement personnel. The information to be seized consists of communications of any type . . . that would constitute Providing Material Support to Terrorists." (DE 38-1 at 2-3 (emphasis added).) The Search Warrant did not, as implied by Baum, permit only the review in the first instance, the "search," of messages that "would constitute Providing Material Support to Terrorists." That was a second-level determination, a precondition of "seizure." The importance of this distinction, the blurring of which infects Baum's entire memorandum, is discussed in greater detail below.

3

Warrant sufficiently identified the suspected crimes for which there was probable cause, and which the materials to be seized evidenced.'" (citations omitted)); Lustyik, 57 F. Supp. 3d at 227 ("The Warrants at issue here meet that standard. Although each Warrant broadly describes the items to be seized as 'evidence, fruits, or instrumentalities' of specified federal crimes, each also sets forth an illustrative list of items to be seized. The inclusion of an illustrative list of seizable items brings the Warrants within the Fourth Amendment's particularity parameters."); United States v. Jacobson, 4. F. Supp. 3d 515, 524 (E.D.N.Y. 2014) ("The reference to particular offenses and the use of an illustrative list of items to seize sufficiently particularized the warrants."); United States v. D'Amico, 734 F. Supp. 2d 321, 363 (S.D.N.Y. 2010) ("Moreover, Attachment A provides an exemplary list of records and other items falling within the scope of the Warrant, thereby enabling the executing agents to identify with reasonable certainty what they were authorized to seize."). On the other hand, Baum takes issue with the "government's theory" of interpretation of the Search Warrant and suggests his own gloss on what the Search Warrant should "be understood to contain." (DE 87 at 4-5.) These arguments are both beside the point and, in any event, underscore why the Leon good-faith exception would apply even if this Court were to determine that Magistrate Judge Schroeder's Search Warrant was not based on probable cause.

With respect to the search of voluminous electronically stored information, as here, the 2009 Advisory Committee Notes to Fed. R. Crim. P. 41 explain that Rule 41(e)(2) "acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronic stored information falls within the scope of the warrant." That is precisely what Magistrate Judge Schroeder authorized in the present Search Warrant. (See n.1, *supra*.) Therefore, to the extent that Baum argues that this

4

process was overbroad *per se*, (see, e.g., Baum's memo at 7 ("The reading of the messages to discovery their evidentiary value was a new search unrelated to the Fourth Amendment justification undergirding the warrant.") (DE 87 at 8)), he is simply mistaken. See United States v. Alston, No. 15 Cr. 435 (CM), 2016 U.S. Dist. LEXIS 63776, *17 (S.D.N.Y. Apr. 29, 2016) ("The defendant contends that the extraction report that took all the information off the phone without regard for its particular relevance amounts to a general exploratory search and exceeds what is in the scope of the warrant. This argument runs contrary to overwhelming authority permitting just such a procedure in the context of electronic devices.") (internal punctuation and citation omitted); Scully, 108 F. Supp. 3d at 94-95 ("[C]ourts have long recognized the practical need for law enforcement to exercise dominion over documents not within the scope of the warrant in order to determine whether they fall within the warrant. . . . Notably, every case of which we are aware that has entertained a suppression motion relating to the search of an email account has upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant."); In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@Gmail.com Maintained at Premises Controlled by Google, Inc. ("In re a Gmail Warrant"), 33 F. Supp. 3d 386, 393, 395-96 (S.D.N.Y. 2014) ("[W]e view it as well-established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even when the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government. . . . Thus, we conclude that the warrant properly required that Google deliver all emails in the account to the Government for the purpose of allowing the Government to search the emails for items within the categories specified in the warrant."); United States v. Bowen, 689 F.

Supp. 2d 675, 682 (S.D.N.Y. 2010) (Fourth Amendment does not require authorities to "ascertain which e-mails are relevant before copies are obtained from the internet service provider for subsequent searching").

Likewise, Baum's complaint that the allegedly overbroad nature of this process occurred "merely because Facebook's legal department has expressed unwillingness to entertain more targeted requests" (DE 87 at 6) is misplaced. See In re a Gmail Warrant, 33 F. Supp. 3d at 394 ("[I]t is unrealistic to believe that Google or any other email host could be expected to produce the materials responsive to categories listed in a search warrant.") Similarly, the argument that Special Agent Garver's agreement – that Baum's Facebook conversation with his father did not evidence material support to terrorism (DE 87 at 6) – is disingenuous. It would have been metaphysically impossible for Garver (or any agent) to determine whether Baum's communications with his father (or anyone) evinced material support to terrorism without first reviewing those communications, which, in accordance with the Search Warrant, is how the determination was made. (*See* DE 81 at 29-41.) After all, few people keep files of e-mails labeled "material support of terrorism." See United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990) ("few people keep documents of their criminal transactions in a folder marked 'drug records.'").

B. **The Communications Were Within Plain View While Executing the Search Warrant**

As set forth above, the propriety of the Search Warrant was unassailable. Agents were authorized to review all Facebook messages provided by Facebook to determine those that were to be seized as evidence of material support to terrorism. As part of this review process, agents encountered messages that were – on their face – evidence of another crime. That

brings those messages within the scope of the "plain view" doctrine. See Pugh, 2015 U.S. Dist. LEXIS 170271 at *67-*68 n.15; Lustyik, 57 F. Supp. 3d at 231-32.

**C.  Notwithstanding All of the Foregoing, Leon Would Still Apply**

Baum implicitly concedes that Garver, a non-lawyer, had no reason to believe that the Search Warrant was defective in any way. (See DE 81 at 8, 19.) Indeed, to the extent that Baum argues that the Search Warrant was overbroad (see, e.g., DE 87 at 6), he offers no rationale as to how or why Garver could have known this. Rather, he argues that Garver "applied for a warrant authorizing" the government "to search materials in excess of those it actually thought would yield evidence of Material Support." (DE 87 at 9.) He argues that "Garver knowingly omitted . . . information from his application and thereby misled Judge Schroeder as to the reach of the FBI's probable cause." (DE 87 at 9.) Nothing in the record, and nothing in settled law set forth above, supports this grotesque statement. See Scully, 108 F. Supp. 3d at 104; see also 2009 Advisory Committee Notes to Fed. R. Crim. P. 41. Likewise, the claim that Leon is somehow defeated because the government received material from Facebook that did not end up evincing material support to terrorism (DE 87 at 10), while novel, stands reason on its head. Concomitantly, the argument finds no support in the law.

**D.  The Length of Seizure Did Not Violate the Fourth Amendment**

Baum argues that the 3-month retention of the relevant messages before informing the Social Security Administration about the messages was unreasonable.[3] (DE 87 at 10-11.)

---

[3] Even this description is incomplete and misleading. On February 4, 2014, less than two months after receiving the Facebook material, FBI Special Agent Matthew Hecker contacted SSA Resident Agent in Charge Bradley Parker and informed Parker that the FBI

7


Even accepting for the sake of argument the relevant time period to be three months, that is not an unreasonable period of time within which the government could use the evidence. See Lustyik, 57 F. Supp. 3d at 232 (seizing e-mails after "approximately three months" under plain-view doctrine was reasonable).

### III.   CONCLUSION

The defendant's motion to suppress should be denied.

DATED:      Buffalo, New York, January 31, 2017.

JAMES P. KENNEDY, JR.
Acting United States Attorney

BY:     s/Frank T. Pimentel
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5868
Frank.T.Pimentel@usdoj.gov

---

believed Baum was receiving SSI payments while concealing his foreign travel from SSA in order to continue receiving SSI payments. (DE 69-1 at 3.) On March 7, 2014, during a meeting at the U.S. Attorney's office, the FBI informed the SSA about the Facebook messages. (DE 69-1 at 4.) The FBI provided the messages to SSA three days later. (DE 69-2 at 2; see DE 69-1 at 4.)