UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,     **14-CR-164-WMS-JJM**

   v.           **OBJECTIONS TO REPORT
                  AND RECOMMENDATION**

ARI ELIAS BAUM,

      Defendant.
_____


On March 6, 2017, the Honorable Jeremiah J. McCarthy filed a report and

recommendation (R&R) regarding Ari Baum's pending motions. (Doc. 94)[1].

For the following reasons, Baum objects to Judge McCarthy's R&R. He

certifies that, aside from arguments concerning facts and issues first raised by the

R&R, no new factual or legal arguments are advanced in his objections. *See* L.R.

Crim. P. 59(c)(3).


## RELEVANT FACTS AND BACKGROUND

Unless otherwise indicated, *infra*, Baum relies on the facts and background

as they are set forth in Judge McCarthy's R&R. (Doc. 94 at 1-5).


---

[1] The record will be cited as "Doc. # at #."

## ARGUMENT

### I.  Standard of Review

Baum objects to the R&R pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59.  This Court is required to make a *de novo* determination of his objections. *See* § 636(b)(1).  Because Judge McCarthy's holdings are contrary to law the R&R must be rejected, and Baum's motions granted. *See* § 636(b)(1)(A).

### II.  There was no Probable Cause to Issue the Facebook Search Warrant.

Judge McCarthy concluded that Baum's foreign travel, joined with "the evasive answers he provided about that travel upon his return to the United States," his Facebook "friendship" with a person believed by the FBI to be associated with Al-Qaeda affiliated groups, and Baum's expression of beliefs arguably similar to his Facebook "friend's," amounted to probable cause for a warrant to search his Facebook account. (Doc. 94 at 10-11). Baum disagrees.

The information in the search warrant affidavit does not support a finding of probable cause that Baum was involved in the material support of terrorism. Baum's conduct as described in the affidavit amounted to religious and political speech, travel to various countries, and Facebook "friending" someone regarded by the authorities as suspicious.  There is no indication that he ever threatened anyone, that he committed any crimes, or that he associated with any "terrorists" beyond "friending" an unidentified poster of inflammatory Facebook content (a

2

poster who was one of over a thousand "friends" Baum had on Facebook).  Notably,

Baum never editorialized on this content, nor did he redistribute it. (Doc. 38-1 at 14-

25). Baum's "friending" of this individual, even when coupled with fervent

expressions of religious conviction, does not support the issuance of a search

warrant.

Moreover, the issuance of a search warrant based primarily on Baum's

constitutionally-protected activities violated the First and Fourth Amendments.  As

the Supreme Court has explained:

> National security cases . . . often reflect a
> convergence of First and Fourth Amendment
> values not present in cases of 'ordinary' crime.
> Though the investigative duty of the executive
> may be stronger in such cases, so also is there
> greater jeopardy to constitutionally protected
> speech. 'Historically the struggle for freedom of
> speech and press in England was bound up with
> the issue of the scope of the search and seizure
> power,' *Marcus v. Search Warrants etc.*, 367 U.S.
> 717, 724 (1961).  History abundantly documents
> the tendency of Government—however
> benevolent and benign its motives—to view with
> suspicion those who most fervently dispute its
> policies.  Fourth Amendment protections become
> the more necessary when the targets of official
> surveillance may be those suspected of
> unorthodoxy in their political beliefs.

*United States v. United States District Court for Eastern District of Michigan,*

*Southern Division*, 407 U.S. 297 (1972).

3

Baum provoked suspicion because of his religious and political beliefs.  While reporting those beliefs, various FBI sources contextualized them by pointing out that Baum suffered from bipolar disorder, was not medication compliant, and would fixate on his Muslim faith and Middle-East politics in discussions. (Doc. 38-1 at 16-17). He would proselytize, sometimes offending people, and his Facebook page reflected his convictions. However, neither Baum's beliefs nor his public promotion of them were criminal, and they could not support a finding of probable cause that he was involved in the material support of terrorism.

### III.    The Search Warrant was Overbroad and Lacked Particularity.

Judge McCarthy, noting that the FBI could not know in advance which portions of Baum's Facebook account might contain evidence of Material Support, held that the warrant therefore necessarily, and permissibly, authorized a search of the entirety of the account. (Doc. 94 at 13-15).

Baum maintains that the search warrant was overbroad.  The search warrant application states that Baum's "friending" of Yabroody shows "the possibility of recruitment and radicalization of Baum." (Doc. 38-1 at 25). While speculative, even if that were true, it would support the seizure of communications only between Baum and Yabroody.  The warrant, however, authorizes the seizure of all communications, including private messages, between Baum and any other Facebook users.

The search warrant was overbroad because it permitted the seizure of all communications on Baum's Facebook account, and was not limited to those communications with the suspected terrorist "Yabroody."  Moreover, there was no evidence that Baum had ever communicated with Yabroody, only that he was one of over a thousand of

Baum's Facebook "friends."  Even if the Court finds there was probable cause, the

warrant should have been limited to communications between Baum and Yabroody,

not Baum and everyone he communicated with on Facebook.

The Supreme Court has discussed the issue of overbroad search warrants in

the realm of communications:

> We recognize that there are grave dangers inherent in
> executing a warrant authorizing a search and seizure of a
> person's papers that are not necessarily present in executing a
> warrant to search for physical objects whose relevance is more
> easily ascertainable. In searches for papers, it is certain that
> some innocuous documents will be examined, at least cursorily,
> in order to determine whether they are, in fact, among those
> papers authorized to be seized. Similar dangers, of course, are
> present in executing a warrant for the "seizure" of telephone
> conversations. In both kinds of searches, responsible officials,
> including judicial officials, must take care to assure that they
> are conducted in a manner that minimizes unwarranted
> intrusions upon privacy.

*Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737 (1976) (emphasis

added).

In Baum's case, the search warrant was substantially overbroad and did not

"minimize[] unwarranted intrusions upon privacy."  The following is an excerpt of

some of the items authorized to be seized in the search warrant:

> "All contact information, including full name, user
> identification number, birth date, contact e-mail
> addresses, physical address (including city, state,
> and zip code), telephone numbers, screen names,
> websites, and other personal identifiers, and, for
> any pertinent Facebook groups . . . a list of users
> currently registered to the group, and group

3

> contact info, including all contact information for the creator and/or administrator of the group and a PDF of the current status of the group profile page . . . all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them . . . status updates; links to videos, photographs, articles, and other items; Notes; wall postings, friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications . . . .  All other communications and messages made or received by the user, including all private messages, Facebook chat messages, and pending "Friend" requests . . . .  All IP logs, including all records of the IP addresses that logged into the account."

(Doc. 38-1 at 2).

Here, the Government sought a search warrant for *all* of Baum's Facebook communications to investigate whether he was providing support to terrorism, specifically an individual identified as "Yabroody."  The Court authorized a seizure of all of Baum's Facebook communications, and extensive other information from his Facebook account, which was not limited to communications with Yabroody. This seizure ultimately yielded incriminating messages between Baum and his father concerning his overseas travel and eligibility to receive Social Security Benefits that were in no way related to terrorism.  The probable cause did not support the seizure of communications between Baum and his family members, and this evidence should be suppressed.

4

Additionally, Judge McCarthy rejected Baum's arguments that the warrant was insufficiently particular, holding that it did not vest the FBI with unbridled discretion, adequately identified the materials to be seized and the object of the subsequent search, and necessarily authorized the review of communications, the content of which the FBI could not determine in advance. (Doc. 94 at 15-19). Baum continues to contend that the warrant was insufficiently particular.

The Fourth Amendment requires that a search warrant describe with particularity the place to be searched and the things to be seized. *United States v. Bershchansky*, 788 F.3d 102, 110-11 (2d Cir. 2015) (citing *Kentucky v. King*, 563 U.S. 452 (2011); *United States v. Clark*, 638 F.3d 89, 102 (2d Cir. 2011)). "This particularity requirement protects individuals from 'exploratory rummaging' not supported by probable cause." *Bershchansky*, 788 F.3d at 111 (citing *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013); *United States v. McCargo*, 464 F.3d 192, 196 (2d Cir. 2006)).

The particularity requirement has three aspects. First, a search warrant must set out the specific crime for which the police have demonstrated probable cause. *Galpin*, 720 F.3d at 445 (citing *United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)). Second, it must describe the place to be searched. *Galpin*, 720 F.3d at 445-46 (citing *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012); 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)). Third, the warrant must identify the items to be seized and their relationship to the crimes for which probable cause has been

5

shown. *Galpin*, 720 F.3d at 446 (citing *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *United States v. Buck*, 813 F.2d 588, 590-92 (2d Cir. 1987); 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)).

In issuing the search warrant, Judge Schroeder found that the government had demonstrated probable cause to believe that violations of 18 U.S.C. § 2339A, or "Providing Material Support to Terrorists," were occurring (Doc. 38-1 at 1-3). The warrant described the place to be searched generally as the Facebook account of Ari Baum, and by incorporation of Attachment A provided a laundry list of areas of the account to be searched, including "all private messages, Facebook chat messages" that "would constitute Providing Material Support to Terrorists" (Doc. 38-1 at 2-3). Finally, the warrant directed the seizure of any information constituting "Providing Material Support to Terrorists" (Doc. 38-1 at 3).

Judge McCarthy read the warrant as authorizing a sweeping search of Baum's Facebook account, including all of his private messages without limitation (Doc. 85 at 2-5). This reading, however, undermines the probable cause dimension of the particularity requirement by eliminating any prerequisite that the warrant be read to authorize searches only of those places where law enforcement has probable cause to believe evidence of the crime specified in the warrant may be found.

The Baum warrant cannot contextually be read this way, nor does the Fourth Amendment permit such a construction. The scope of a warrant must be limited by the probable cause on which it is based. *United States v. SDI Future Health, Inc.*,

6

568 F.3d 684, 702 (9th Cir. 2009) (citing *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991)); *see also United States v. Leary*, 846 F.2d 592, 605 (10th Cir. 1988); *In the Matter of a Warrant for All Content and Other Information Associated with the Email Account xxxxxxx gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F.Supp.3d 386, 389 (S.D. NY 2014); *United States v. Barnes*, 749 F.Supp.2d 1124, 1133 (D. ID 2010); *United States v. Cohan*, 628 F.Supp.2d 355, 359 (E.D. NY 2009);*United States v. Lebowitz*, 647 F.Supp.2d 1336, 1351 (N.D. GA 2009); *United States v. Patrick*, 916 F.Supp. 567, 574 (N.D. WV 1996). Here, the probable cause demonstrated pertained to "Providing Material Support to Terrorists," and the laundry list of places to be searched in Attachment A must therefore be understood to contain the implicit but essential constraint that law enforcement confine itself to searching only those of the listed areas in which it has probable cause to believe evidence of that crime may be found.

If the Baum warrant is not read with this limitation in mind, it becomes an overbroad "general warrant – authorizing police agents to undertake an indiscriminate rummaging through citizens' personal effects" that "is prohibited by the Fourth Amendment's command that 'no Warrants shall issue [unless] particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (citing U.S. Const. amend. IV; *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Otherwise, we must imagine that Judge Schroeder intended to allow the FBI to rummage through

private communications of Baum that it had no reason to believe were related to its investigation.

Unfortunately, that in fact happened in this case. Garver's testimony established that when the FBI requests a search warrant for Facebook information, it does not limit itself to asking for materials it has probable cause to believe contain evidence of a crime; rather, in every case it asks for the entire contents of its target's Facebook account for a specified date range, regardless of whether it has cause to believe it will find evidence littered across the account (Doc. 81 at 27-28).

Thus, in this case and presumably others, it appears the FBI requested the authority to search swaths of private information it had no affirmative reason to think constituted evidence of a crime. And it apparently did so not out of any law enforcement imperative, but merely because Facebook's legal department has expressed unwillingness to entertain more targeted requests (Doc. 81 at 27-28). Moreover, while Judge McCarthy discounted its significance (Doc. 94 at 21), Garver's testimony established that he, the agent who drafted the affidavit and was initially in charge of the investigation, had no reason to believe that Baum's private Facebook messages with his father "would have anything to do with material support to terrorism." (Doc. 81 at 29-30).

The most instructive Second Circuit precedent in this area, *United States v. Galpin*, is worth quoting at some length:

> Where, as here, the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance. As numerous courts and commentators have observed, advances in technology and the centrality of

> computers in the lives of everyday people have rendered the
> hard drive akin to a residence in terms of the scope and quantity
> of the private information it may contain….
> The potential for privacy violations occasioned by an unbridled,
> exploratory search of a hard drive is enormous. This threat is
> compounded by the nature of digital storage. Where a warrant
> authorizes the search of a residence, the physical dimensions
> of the evidence sought will naturally impose limitations on where
> an officer may pry….Such limitations are largely absent in the
> digital realm, where the size or other outwardly visible characteristics
> of a file may disclose nothing about its content….
>
> Once the government has obtained the authorization to search the
> hard drive, the government may claim that the contents of every
> file it chose to open were in plain view and, therefore, admissible
> even if they implicate the defendant in a crime not contemplated
> by the warrant. There is, thus, a serious risk that every warrant for
> electronic information will become, in effect, a general warrant,
> rendering the Fourth Amendment irrelevant. *This threat demands
> a heightened sensitivity to the particularity requirement in the
> context of digital searches.*

720 F.3d 436, 446-48 (2d Cir. 2013) (emphasis added).

While Baum's Facebook account was not, literally, a hard drive, it was

materially indistinguishable for Fourth Amendment purposes. The FBI won access

to a mirror copy of an astonishing amount and array of Baum's digitally preserved

information; the fact that it was web-based rather than stored on a local data

retention device is of no constitutional moment. Indeed, the fact that Baum's

Facebook account was delivered to the FBI as a single Adobe PDF document makes

the Bureau's indiscriminate rummaging through his private messages even more

culpable; Adobe PDF documents are generally searchable using simple devices such

as keywords, and those that are not can be easily rendered so. *See*

*http://blogs.adobe.com/acrolaw/2007/02/is_that_pdf_sea/* (page last visited April 20, 2017).

Thus, not only was Agent Garver aware that he had no probable cause to search Baum's emails with his father, there was available to him an easy technique to avoid a probing of Baum's personal materials and he chose not to propose it to Judge Schroeder as an *ex ante* constraint on the execution of the search warrant, or to use it when searching Baum's Facebook account. Put differently, the FBI ignored *Galpin's* caution about the importance of the particularity requirement in digital searches, and do so in the face of compelling evidence that the search *at issue here* could and should have been conducted in a way that would have honored that constitutional constraint. *Cf. Galpin*, 720 F.3d at 453 (discussing evidence that "investigators sought evidence beyond the scope of the one crime that was particularized in the warrant application and for which the application demonstrated probable cause"); *Cf. also*, *Riley v. California*, 134 S.Ct. 2472, 2490-91 (2014) (discussing the qualitative and quantitative differences between digital records and physical records, and the implications of those differences for invasions of privacy).

## IV.     Good Faith Does not Save the Unconstitutional Search.

Concluding that Agent Garver did not mislead Judge Schroeder when seeking the warrant, that Judge Schroeder did not abandon his judicial role in approving the warrant, and that the warrant affidavit was not so lacking in probable cause as

to render reliance on it unreasonable, Judge McCarthy held that, "even if the search warrant lacked probable cause, was overbroad or insufficiently particularized" suppression would still be unjustified because the FBI reasonably relied on the warrant in good faith. (Doc. 94 at 19-22). For several reasons, Baum maintains that the FBI's reliance on the warrant was not objectively reasonable.

An officer who believes that he has a valid warrant, and executes that warrant in good faith, does not knowingly violate the Fourth Amendment; since there is no misconduct to deter in such a situation, suppression is unwarranted. *United States v. Leon*, 468 U.S. 897, 920-21 (1984). However, the officer's reliance must be objectively reasonable, and it cannot be so where, *inter alia*, the issuing magistrate has been knowingly misled, the application for the warrant is so deficient in indicia of probable cause that it cannot be reasonably relied on, or the magistrate abandoned his judicial role in issuing the warrant. *Leon*, 468 U.S. at 922-23.

Police may not reasonably rely on a warrant, and suppression is an appropriate remedy, where the magistrate has been misled by information in the warrant affidavit that the applicant "knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008) (material omissions in an affidavit invalidate a search warrant when they undermine probable cause).

Here, as discussed, *supra*, the FBI applied for a warrant authorizing it to search materials in excess of those it actually thought would yield evidence of Material Support. It did so pursuant to an apparently blanket policy to request warrants for entire Facebook accounts that is founded in administrative convenience, rather than law enforcement imperative.

Further, with respect specifically to private communications between Baum and his father, Agent Garver admitted he had no reason whatsoever to believe that they were related to its Material Support investigation. Even if it was truly impracticable to garner Facebook's compliance with a targeted warrant request tailored to the probable cause the Bureau actually possessed, there was no reason the FBI could not have informed Judge Schroeder that it lacked probable cause with respect to specific communications, including those between Baum and his father. In that manner, even had Facebook turned over Baum's entire Facebook profile to the authorities, Judge Schroeder might have appropriately and explicitly confined the FBI's review of that profile to areas in which probable cause existed to believe evidence of Material Support might be found. Garver omitted this information from his application and Judge Schroeder was thus misled as to the reach of the FBI's probable cause.

Moreover, as discussed*, supra*, the only reasonable construction of the Baum warrant reads it to require a relationship between the showing of probable cause regarding Material Support, and the places in which there is probable cause to believe that evidence substantiating the commission of that offense might be found.

12

That relationship stems in the first instance from the indicia of probable cause set out in Garver's warrant affidavit (Doc. 38-1 at 5). A review of that document shows that Baum's father does not even appear in it; Garver simply provides no indicia of probable cause to believe that a review of the private messages between Baum and his father would yield any evidence of Material Support. Accordingly, it was unreasonable for the FBI to rely on the warrant as authorizing rummaging through private communications.

Finally, if the warrant is construed as it is in the R&R, so that it authorized a broad search of the whole of Baum's Facebook account for evidence of Material Support, then reliance on the warrant was objectively unreasonable because Judge Schroeder must merely have rubber-stamped a probable cause showing insufficient to justify the extensive search he authorized. In other words, even if, *arguendo*, Agent Garver's affidavit demonstrated probable cause to believe that Baum's private messages with the co-target of the warrant might contain evidence of Material Support, it made absolutely no attempt to show that was the case with Baum's private messages generally, or with his father in particular. And because Judge Schroeder would then have authorized searches of private conversations there was no probable cause to believe were evidence or instrumentalities of Material Support, he may be said to have abandoned his judicial role and authorized a prosecutorial fishing expedition. *Cf. United States v. Swift*, 720 F.Supp.2d 1048, 1058-60 (E.D. Ark. 2010) (holding that magistrate abandoned his judicial role by authorizing search of "any and all vehicles and persons" at a

13

particular address on the basis of boilerplate language in warrant affidavit); *see generally United States v. Martin*, 297 F.3d 1308, 1316-17 (11th Cir. 2002) (collecting cases illustrating ways in which magistrates may abandon their judicial role).

## V.   The Seizure was Unreasonably Protracted.

Judge McCarthy found that the FBI's retention of Baum's Facebook was not unreasonably protracted because it continued during a relatively brief three months during which the FBI was conducting a review of them, and because the seizure was independently authorized by the plain view exception to the warrant requirement. (Doc. 94 at 22-23). Baum objects.

"A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable seizures." *Jacobsen*, 466 U.S. at 124.

In *United States v. Ganias*, 755 F.3d 125, 137 (2d Cir. 2014) (*Ganias I*), the Second Circuit held that the government may not rely on a warrant for the seizure of particular computer data to indefinitely retain all of the data from the computer for use in future, unrelated criminal investigations. Later, in *United States v. Ganias*, 824 F.3d 199, 220-25 (2d Cir. 2016) (*Ganias II*) the *en banc* Second Circuit reversed the *Ganias I* panel, but did so based on law enforcement's reasonable

14

reliance on a second warrant obtained specifically for the protractedly retained data, leaving the underlying seizure issue present in *Ganias I* unreached.

Here, it appears the FBI received Baum's Facebook profile on or about December 12, 2013 (Doc. 85 at 3). The FBI did not inform the Social Security Administration of the private messages until March 7, 2014 (Doc. 85 at 4). Thus, it appears that the FBI seized and retained Baum's private communications for nearly three months before acting on them; the messages are still retained by the FBI, which never sought a second warrant to search and seize them in connection with the instant investigation (Doc. 81 at 25).

The protracted retention of private messages unrelated to Material Support was unreasonable. This case is easily distinguished from *Ganias II*. Here, unlike there, the FBI did not carefully limit its search to materials related to Material Support, as discussed at sections I and II, *supra*. Nor, upon realizing that Baum's messages with his father might be evidence of a crime unrelated to its Material Support investigation, did the Bureau promptly apply for a search warrant, disclosing its lengthy seizure of the messages to a neutral magistrate for a probable cause finding. And third, at the time the seizure of the private messages commenced, there was Supreme Court authority expressly prohibiting unreasonably protracted seizure. *See Jacobsen*, *supra*. Accordingly, the unreasonable seizure and retention of Baum's private messages cannot be excused by good faith, and they should be suppressed.

## VI.    The Plain View Doctrine Does not Apply.

Having concluded that the search warrant was valid and authorized the review of Baum's Facebook *in toto*, Judge McCarthy went on to hold that the FBI did not intentionally look for evidence of SSI fraud in Baum's communications with his father, and that the incriminating nature of those communications was immediately apparent, so that the plain view doctrine authorized their seizure. (Doc. 94 at 23-27). Baum disagrees.

"The plain view doctrine permits an officer to seize evidence outside of a warrant's authorization when it is immediately apparent that the object is connected with criminal activity, and where search and seizure do not involve an invasion of privacy." *United States v. Galpin*, 720 F.3d 436, 450-51 (2d Cir. 2013) (quoting *United States v. George*, 975 F.2d 72, 78 (2d Cir. 1992); *see also United States v. Gamble*, 388 F.3d 74,76 (2d Cir. 2004) (police must have prior Fourth Amendment justification for access to items in plain view they wish to seize). To avoid an invasion of privacy, the police must lawfully be at the vantage point from which they observe the object in plain view. *Galpin*, 720 F.3d at 451 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). The "plain view" exception to the warrant requirement cannot be relied on to justify the search and seizure here, for two reasons.

First, either because the search and seizure of the private messages was not within the scope of the warrant or, alternatively, because the warrant is overbroad and could not legitimately authorize such a search and seizure, the FBI did not

have a right of access to the private messages sanctioned by the Fourth Amendment. The FBI knew it had requested far more private material than it had cause to believe was relevant to its investigation, and knew specifically that it had no reason to think that Baum's private messages with his father constituted evidence of Material Support. As to the private messages, the search and seizure was a fishing expedition untethered to any probable cause.

Second, it could not have been "immediately apparent" that the private messages were connected to criminal activity. According to Garver, the FBI did not think that they were evidence of Material Support; accordingly, upon reading the first exchange, which clearly identifies the participants in the conversation, it would have been immediately apparent that the messages were not related to that offense (Doc. 69-2 at 3). But instead of moving on at that point, the FBI read and seized the whole of the messages, and it was only by doing so that it identified them as evidence of the offenses with which Baum is now charged.

The reading of the messages to discover their evidentiary value was a new search unrelated to the Fourth Amendment justification undergirding the warrant – the relevant passages occur halfway through the exchange (Doc. 69-2 at 3-4). This search required independent probable cause. *Cf. Arizona v. Hicks*, 480 U.S. 321, 323-28 (1987) (moving stereo components to read serial numbers was a search requiring probable cause). The FBI had none; while the Bureau may have had reason to think that Baum was illegally collecting social security benefits while abroad for extended periods, the government has not shown or even claimed that,

prior to reading the messages, it had any reason to think that Baum's father knew of his activities (Doc. 85 at 5). Accordingly, there was no probable cause to believe that the messages were "connected with criminal activity," and the search and subsequent seizure were unlawful. *Gamble*, 388 F.3d at 76.

Further, there are substantial complications posed by the application of the plain view doctrine to the digital environment. Numerous courts have expressed skepticism about the unthinking application of the doctrine to searches of digital files and media, and have cautioned extreme and fact-sensitive circumspection in doing so. In *United States v. Carey*, for example, the Tenth Circuit rejected the proposition that plain view justified the seizure of digital images of child pornography pursuant to a warrant authorizing a search for evidence of narcotics offenses where the searching officer knew, after opening one image file, that he was likely to find evidence of child pornography, and not drugs, in each subsequent image file. 172 F.3d 1268, 1274-1276 (10th Cir. 1999). Saliently, the *Carey* Court noted:

> With the computers and data in their custody, law enforcement officers can generally employ several methods to avoid searching files of the type not identified in the warrant: observing file types and titles listed on the directory, doing a key word search for relevant terms, or reading portions of each file stored in the memory…In this case, Detective Lewis and the computer technician did list files on the directory and also performed a key word search, but they did not use the information gained to limit their search to items specified in the warrant, nor did they obtain a new warrant authorizing a search for child pornography.

172 F.3d at 1276.

18

Here, Agent Garver knew that he applied for a warrant requesting the authority to "review" materials he had no reason to believe contained evidence of the crime (Material Support) specified in the warrant; namely, Baum's messages with his father. Nevertheless, like Detective Lewis, the FBI searched Baum's messages with his father, and discovered what seemed to be evidence of an alleged crime not specified in the warrant. That discovery was no more a matter of "plain view" than was Detective Lewis' unearthing of child pornography. *See also generally*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1175-78 (9th Cir. 2010) (questioning the application of the plain view doctrine to digital searches and noting that, while "over-seizing" is likely to be common in digital records cases, "the process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect").

## CONCLUSION

For the foregoing reasons, Ari Elias Baum requests that the R&R be rejected and his motions to suppress the fruits of the search of his Facebook account be granted.

**DATED**:            Buffalo, New York, April 20, 2017

                              Respectfully submitted,

                              **/s/ Martin J. Vogelbaum**
                              Martin J. Vogelbaum
                              Assistant Federal Public Defender
                              Federal Public Defender's Office
                              300 Pearl Street, Suite 200
                              Buffalo, New York 14202
                              (716) 551-3341, (716) 551-3346 (Fax)
                              Martin_Vogelbaum@fd.org
                              *Co-Counsel for Ari Elias Baum*

**TO:**   Frank T. Pimentel
          Assistant United States Attorney