IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                          14-CR-164-S

ARI ELIAS BAUM,

                        Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO REPORT AND RECOMMENDATION**

The United States of America, through its attorneys, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, and Jonathan P. Cantil, Assistant United States Attorney, of counsel, hereby files its response to defendant's objections to Magistrate Judge McCarthy's Report, Recommendation and Order ("R&R") (Docket Entry ("DE") 97).

### I. FACTUAL BACKGROUND

Unless otherwise indicated, the government adopts the facts as outlined in Magistrate Judge McCarthy's March 6, 2017 R&R. DE 94 at 1-5.

On April 20, 2017, the defendant filed objections to Magistrate Judge McCarthy's R&R, alleging the following errors: (1) there was no Probable Cause to issue the Facebook search warrant; (2) the Facebook search warrant was overbroad and lacked particularity; (3) good faith does not save the allegedly unconstitutional search; (4) the seizure of information

from the Facebook search warrant was unreasonably protracted; and (5) the Plain View Doctrine does not apply.

The government will respond to these allegations *seriatim*.

## II. ARGUMENT

### A. The Search Warrant Was Supported by Probable Cause

The December 4, 2013 Search Warrant issued by Magistrate Judge Schroeder was supported by an affidavit by FBI Special Agent ("SA") Randall Garver. This affidavit established a substantial basis for Magistrate Judge Schroeder to conclude that a search would uncover evidence a violation of Title 18, United States Code, Section 2339A, providing material support to terrorists. Magistrate Judge McCarthy examined the search warrant issued by Magistrate Judge Schroeder, correctly applied the corresponding law to a probable cause challenge and correctly concluded the search warrant was supported by probable cause.

In assessing whether a magistrate properly issued a search warrant, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." Id. "[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner." Id. "[S]o long as the magistrate had

a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id.

SA Garver's affidavit provided Judge Schroeder with a substantial basis to conclude that a search would uncover evidence of wrongdoing. As both the government and Judge McCarthy have discussed in exacting detail, myriad facts support Judge Schroeder's probable cause determination. See DE 94 at 8-10; see also DE 39 at 4-7. Notably, the defendant's cellular telephone was searched, revealing a text-message that stated, in part, "I heard you are being trained for being used as a terrorist." DE 39 at 4. Additionally, multiple sources provided information to the FBI that the defendant was living in Yemen and expressing increasingly extreme and aggressive religious ideologies. Id. At 5-7. The facts as set forth in SA Garver's affidavit, and discussed by both the government and Magistrate Judge McCarthy, should be considered in their totality. See Gates, 462 U.S. at 238. (reaffirming the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations).

The defendant argues that the search warrant was not supported by probable cause and, instead, the defendant's conduct amounted to religious and political speech, travel to various countries, and Facebook "friending" someone regarded by the authorities as suspicious. These defense contentions mischaracterize the facts of this case and ask this court to review the evidence piece-by-piece rather than using the appropriate totality of the circumstances standard as provided by Gates. 462 U.S. at 238.

The defense's attempt to minimize the defendant's conduct is inapposite with the facts of this case. The defendant was not merely engaging in religious and political speech; instead, he was threatening people on social media with religious rhetoric. DE 39 at 6. The defendant was not merely traveling to various countries; he was traveling to Yemen and Syria, both of which are currently subject to travel bans by the United States Department of State because of terrorist related activity. <u>See</u> https://travel.state.gov/content/passports/en/alertswarnings/yemen-travel-warning.html; <u>see also</u> https://travel.state.gov/content/passports/en/alertswarnings/syria-travel-warning.html. The defendant was not merely "friending" someone suspicious; he was engaging with an individual known as "Sniper from Yabroud," with a facebook account linked to the Islamic State of Iraq and Levant (ISIL). DE 39 at 7. Finally, the defense's claim that the defendant never editorialized on inflammatory Facebook content is belied by the facts of this case. DE 39 at 9. In July 2013, the defendant shared a picture on Facebook of a man and woman sitting at a table, dressed in military attire and holding weapons, with the caption "husband and wife fighting for Islam!" The defendant commented on this picture, stating, "the most beautiful photos I have ever seen!!!" Garver Affidavit [38-1], ¶34.

Magistrate Judge McCarthy correctly viewed the evidence contained in SA Garver's affidavit in its totality and correctly concluded Magistrate Judge Schroeder had a substantial basis to conclude that a search would uncover evidence of Providing Material Support to Terrorists. Accordingly, Magistrate Judge McCarthy's R&R, finding sufficient probable cause for the issuance of the search warrant, should be adopted by this court.

**B.     The Facebook Search Warrant Was Not Overbroad and Was Sufficiently Particularized**

The December 4, 2013 Search Warrant, supported by probable cause as outlined in the immediately preceding section, properly authorized the search of the Defendant's Facebook communications, photos, status updates, and other information as outlined in the Attachment A of the Search Warrant.  Additionally, the Search Warrant was sufficiently particularized to provide the necessary guidelines for the search by the executing officers.

The defense challenge to the breadth and particularity of the December 4, 2013 Search Warrant should be denied for the reasons outlined below and this court should adopt Magistrate Judge McCarthy's R&R.

      i.     Overbreadth

The December 4, 2013 Search Warrant was consistent with the requirements of the Fourth Amendment and was not overbroad.  With respect to the search of voluminous electronically stored information, as here, the 2009 Advisory Committee Notes to Fed. R. Crim. P. 41 explain that Rule 41(e)(2) "acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronic stored information falls within the scope of the warrant."  That is precisely what Magistrate Judge Schroeder authorized in the December 4 Search Warrant.  Therefore, the defendant argument that this process was overbroad is incorrect, unsupported by law and runs contrary to overwhelming authority permitting just such a procedure in the context of electronic devices."  See United States v. Alston, No. 15 Cr. 435 (CM), 2016 U.S. Dist. LEXIS 63776, *17 (S.D.N.Y. 2016); see also United States v.Scully, 108 F. Supp. 3d 59, 94-

95 (E.D.N.Y. 2015) ("[C]ourts have long recognized the practical need for law enforcement to exercise dominion over documents not within the scope of the warrant in order to determine whether they fall within the warrant. . . . Notably, every case of which we are aware that has entertained a suppression motion relating to the search of an email account has upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant.").

The defense incorrectly asserts that the search warrant should have been limited only to communications between the defendant and the Sniper from Yabroud.  Defendant's Reply [42], pp. 1-2 (stating "The search warrant application states that Baum's 'friending' of Yabroody shows 'the possibility of recruitment and radicalization of Baum.'…While, speculative, even if that were true, it would support the seizure of communications only between Baum and Yabroody.").

The defense simply misunderstands the scope of the warrant.  Based on the facts outlined in SA Garver's Affidavit, including the accused association with Yabroud and other facts contained in SA Garver's affidavit, there was probable cause to believe the accused Facebook page contained evidence of providing material support to terrorist.  While the accused's conversation with the Sniper from Yabroud was one piece of evidence that was used to establish that probable cause, the defense erroneously suggests that the government should then only be allowed to search the conversations between the Sniper from Yabroud and the defendant.

The defense is conflating two separate, distinct concepts: (1) the evidence used to establish probable cause and (2) the area to be searched and items to be seized in the warrant. The warrant was not limited to only conversations between the defendant and Yabroud; Rather, the defendant's connections with the Sniper from Yabroud, combined with the other facts outlined in SA Garver's search warrant, established probable cause to search the defendant's Facebook page for evidence of providing material support to terrorists, not just evidence of being recruited by the Sniper from Yabroud.

Similarly, the argument that SA Garver's agreement—that Baum's Facebook conversation with his father did not evidence material support to terrorists (DE 87 at 6)—is disingenuous. As previously stated, it would have been metaphysically impossible for Garver (or any agent) to determine whether Baum's communications with his father (or anyone) evinced material support to terrorists without first reviewing those communications, which, in accordance with the Search Warrant, is how the determination was made. See DE 81 at 29-41. After all, few people keep files of e-mails labeled "material support of terrorism." See United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990) ("few people keep documents of their criminal transactions in a folder marked 'drug records.'").

The defense offers no compelling authority for their argument. Even in Andresen v. Maryland, 427 U.S. 463 (1976), the case cited by the defense, the Supreme Court recognized that in searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. 427 U.S. 463, 482 n. 11 (1976).

Likewise, the Defendant's complaint that the allegedly overbroad nature of this process occurred "merely because Facebook's legal department has expressed unwillingness to entertain more targeted requests" (DE 87 at 6) is misplaced. See In re a Gmail Warrant, 33 F. Supp. 3d at 394 ("[I]t is unrealistic to believe that Google or any other email host could be expected to produce the materials responsive to categories listed in a search warrant.") Additionally, and importantly, as Judge McCarthy accurately noted, the Fourth Amendment does not "require the executing authorities to delegate a pre-screening function to the internet service provider." United States v. Bowen, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010), aff'd., 490 Fed. App'x 363 (2d Cir. 2012) (Summary Order).

As outlined above, SA Garver's affidavit provided Magistrate Judge Schroeder with a substantial basis to determine a search of the defendant's Facebook page, including all the items listed in Attachment A of the warrant, would reveal evidence providing material support to terrorists. The areas to be searched, as set forth in Attachment A of the Search Warrant, were not overbroad; Rather, these categories of information were properly limited to areas that would potentially reveal evidence of material support for terrorists. Accordingly, the defense's overbreadth argument fails.

  ii.   Particularity

The requirement of particularity is satisfied where the warrant: (1) identifies "the specific offense for which the police have established probable cause;" (2) "describe[s] the place to be searched;" and (3) specifies "the items to be seized by their relation to designated crimes." United States v. Galpin, 720 F.3d 436, 445-46 (2d. Cir. 2013). A failure to describe

the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary. See Coolidge v. N.H., 403 U.S. 443, 467 (1971); United States v. Cardwell, 680 F.2d 75, 78, 50 A.F.T.R.2d (P-H) 5512 (9th Cir. 1982); United States v. Klein, 565 F.2d 183, 186 (1st Cir. 1977); United States v. Marti, 421 F.2d 1263, 1268 (2d Cir. 1970).

The particularity requirement prevents this sort of privacy invasion and reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause. See Maryland v. Garrison, 480 U.S. 79, 84 (1987); Coolidge, 403 U.S. at 467. Mere reference to "evidence" of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize. See United States v. Maxwell, 920 F.2d 1028, 1033 (D.C. Cir. 1990) (wire fraud); United States v. Holzman, 871 F.2d 1496, 1509 (fraud) (9th Cir. 1989); United States v. Fuccillo, 808 F.2d 173, 176-77 (1st Cir.) (stolen goods), *cert. denied,* 482 U.S. 905, 96 L. Ed. 2d 374, 107 S. Ct. 2481 (1987); Voss v. Bergsgaard, 774 F.2d 402, 405 (10th Cir. 1985) (conspiracy); Cardwell, 680 F.2d at 77 (tax evasion). Absent some limitation curtailing the officers' discretion when executing the warrant, the safeguard of having a magistrate determine the scope of the search is lost. As a consequence, authorization to search for "evidence of *a* crime," that is to say, any crime, is so broad as to constitute a general warrant.

In the search warrant at issue in Galpin, authorized officers to search the defendant's physical property for evidence of violations of NYS Penal Law and Federal Statutes. 720

9

F.3d at 443. Because this language allowed officers to search for evidence of any crime, rather than specific crimes, the Second Circuit held the warrant violated the Fourth Amendment's particularity requirement. Id. at 448.

The warrant in this case is easily distinguished. The December 4, 2013 Search Warrant did not allow for a general search of evidence of any crime, as proscribed against in Galpin. Instead, the Warrant was limited to a search for evidence of providing material support to terrorists. Further, the Search Warrant defined the area to be searched—the defendant's Facebook page—and the items to be seized—the items listed in Attachment A. These limitation provided readily ascertainable guidelines for the executing officers as to what items to seize. See United States v. George, 975 F.2d 72, 76 (2d Cir. 1992). Further, these guidelines enabled law enforcement officers to ascertain and identify with reasonable certainty those items which they were authorized to seize. United States v. Smith, 2007 WL 2088938, *3 (W.D.N.Y. July 19, 2007). However, they do not limit law enforcement search to only communication between the Defendant and the Sniper from Yabroud.

Accordingly, the warrant here meets the particularity requirements of the Fourth Amendment as set forth in Galpin, and the defense argument fails.

**C.     The Good Faith Exception Applies and Saves any Hypothetical Infirmities Contained Within the Search Warrant.**

Even assuming *arguendo* that the Search Warrant was not supported by probable cause, was overbroad, or did not satisfy the particularity requirement, the evidence seized would nevertheless be admissible under the good faith exception to the exclusionary rule set forth in

10

United States v. Leon. 468 U.S. 897 (1984). In Leon, "the Supreme Court recognized an exception to the exclusionary rule for evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011). As the Second Circuit noted in Clark, "suppression 'is our last resort, not our first impulse' in dealing with violations of the Fourth Amendment. Id. (citing Herring v. United States, 555 U.S. 135 (2009)).

The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant. United States v. George, 975 F.2d 72, 77 (2d Cir. 1992). As noted by Magistrate Judge McCarthy, there are four circumstances where an exception to the exclusionary rule would not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing Leon, 468 U.S. at 923).

The defense argues: (1) SA Garver knowingly misled Magistrate Judge Schroeder; (2) the warrant was so deficient in indicia of probable cause that it could not have been reasonably relied on; and (3) Magistrate Judge Schroeder abandoned his judicial role in issuing the December 4 warrant. Each of these arguments is meritless.

For the reasons outlined in Magistrate Judge McCarthy's R&R, none of these circumstances apply to this case and the executing law enforcement officers' reliance on the search warrant was objectively reasonable. DE 94 at 19-23.

Magistrate Judge Schroeder was not misled, knowingly or otherwise, regarding the probable cause in the December 4 Search Warrant. The defense argues that the FBI *should have* informed Magistrate Judge Schroeder that there was no information at that time which indicated the defendant was discussing terrorist related activity with his father. And had the FBI made this disclosure, then Magistrate Judge Schroeder *might have* confined the FBI's review of the defendant's Facebook Profile to only conversations between the defendant and Yabroud. As discussed above, SA Garver's affidavit established probable cause to search the defendant's entire Facebook page, not just conversations between the defendant and the Sniper from Yabroud. There is also no evidence to suggest that SA Garver provided any false statements in the search warrant affidavit. Accordingly, the defense cannot satisfy the first argument, that SA Garver knowingly misled Magistrate Judge Schroeder and the requested relief should be denied.

With regard to the defense's second argument, that the warrant was deficient in indicia of probable cause, SA Garver's affidavit sets forth numerous facts that were used to establish probable cause. These facts were examined at length by both Magistrate Judge McCarthy and the government, both in this response and previous responses. See DE 94 at 8-10; see also DE 39 at 4-7.

A law enforcement officer's reliance is not objectively reasonable most often "when affidavits are bare bones, *i.e.*, totally devoid of factual circumstances to support conclusory allegations." United States v. Clark, 638 F.3d 89, 103 (2d Cir. 2011). On the other hand, if "'thoughtful and competent judges' might disagree as to whether the facts alleged established probable cause," then the good-faith exception should apply to prevent suppression. Id. at 104 (quoting Leon, 468 U.S. at 926). Here, Magistrate Judge Schroeder issued the December 4, 2013 Search Warrant based on the facts alleged in SA Garver's affidavit.

For the same reasons already provided with respect to probable cause, even if this Court were to disagree with Magistrate Judge Schroeder's probable cause determination, there cannot be any question that "thoughtful and competent judges" might believe that the allegations in the supporting affidavit were sufficient to demonstrate probable cause. Id. at 104 (quoting Leon, 468 U.S. at 926). The SA Garver affidavit was not a "bare-bones" or devoid of factual circumstances as contemplated by the Second Circuit in Clark. Instead, SA Garver's affidavit was replete with facts establishing probable cause to search the Defendant's Facebook page for evidence of material support to terrorists. Therefore, the defense's second argument fails.

Finally, the defense argument that Magistrate Judge Schroeder abandoned his judicial role has no basis in fact and is nothing more than a conclusory allegation. The defense has not put forth any facts whatsoever that would support this claim and their argument should be summarily denied.

Regardless of this Court's probable cause determination, it was objectively reasonable for the agents who executed the Search Warrant to rely on it, and the good-faith exception should therefore apply to prevent suppression of the resulting evidence.[1]

**D.   The Seizure Was Not Unreasonably Protracted**

The government's seizure of the defendant's Facebook messages was not unreasonably protracted.  As noted by Magistrate Judge McCarthy in the R&R, the FBI received materials from Facebook responsive to the search warrant on December 12, 2013.  The government then brought the subject message to the attention of the Social Security Administration on March 7, 2014, less than four months later.  This four month period is reasonable and recognizes the complexity of reviewing large amounts of electronic information.  To hold otherwise would place an impermissible burden on law enforcement that has no basis in law.  This time frame in this case is easily distinguishable from United States v. Ganais, the case relied on by the defense, where the lapse in time between the search and the seizure was two and a half years, as opposed to the four months here.  755 F.3d 125, 128-29 (2d Cir. 2014).

As the court noted in United States v. Filippi, 2015 LEXIS 137794 (E.D.N.Y. 2015), "'[t]he ultimate touchstone' of the Fourth Amendment with respect to searches and seizures is reasonableness."   (citing Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006).

---

[1] In the event that the Court were to conclude that the search warrant was not supported by probable cause and that reliance on the search warrant was not reasonable, then the government would request an opportunity to brief other potential bases for admissibility of the evidence obtained as a result of the search warrant  For example, the Facebook evidence would have been inevitably discovered because, at the time the search warrant was issued, law enforcement officers manifestly had probable cause to obtain the warrant based on investigation into Baum's being outside of the country while continuing to collect SSI benefits.

However, the Fourth Amendment does not set any specific time limit on the execution of search warrants. See United States v. Metter, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012).

In this case, the government's search of defendant's Facebook information approximately four months after it was seized was not unreasonable given the amount of information recovered. In fact, the Second Circuit in Ganais recognized that "forensic analysis of electronic data may take months to complete." 755 F.3d at 135. Numerous cases hold that a delay of several months between the seizure of electronic evidence and the completion of the government's review of that evidence as to whether it falls within the scope of the warrant is reasonable." See Metter, 860 F. Supp. 2d at 215; see also United States v. Lustyik, 57 F. Supp. 3d 213, 232 (S.D.N.Y. 2014) (finding that three months was not an "unreasonably long time" for the government to review e-mails); United States v. Triumph Capital Crp., Inc., 211 F.R.D. 31, 66 (D. Conn. 2002) ("computer searches are not, and cannot be subject to any rigid time limit because they may involve much more information that an ordinary document search, more preparation and a greater degree of care in their execution.").

Accordingly, the defense challenge to the search warrant on the grounds that the search was unreasonably protracted should fail.

E.   **Plain View Applies**

As set forth above, the December 4, 2013 Search Warrant was based on probable cause to search the defendant's Facebook page for evidence of providing material support to

15

terrorists.  During the course of the search of the defendant's Facebook page, FBI agents were authorized to review the contents of the defendant's Facebook account.  Ultimately, the government found evidence of Social Security fraud.  Because the government had a lawful right to search the Facebook materials for evidence of providing material support to terrorists, and because the incriminating nature of the document was immediately apparent, the plain view doctrine applies and the seizure of the Facebook messages between the defendant and his father concerning social security fraud was lawful.

The plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.  Illinois v. Andreas, 463 U.S. 765, 771 (1983).  "The plain view doctrine has three elements: A lawful search must be in progress, the evidence is discovered and inadvertently, and it is immediately apparent that the discovered item is evidence of a crime." United States v. Silva, 714 F. Supp. 693, 694 (S.D.N.Y. 1989).  All three of those elements are met in this case.

The seizure of the Facebook messages between the defendant and his father regarding social security fraud were discovered inadvertently and seized during the course of a lawful search of the defendant's Facebook page.  Further, the illegality of the defendant's conduct was immediately apparent.  In his conversation with his father, the defendant stated, "life is cheaper here but I will lose the SSI eventually if I stay here because they will find out that I am out of the county [sic]," followed immediately by "country."  The criminal nature of the

messages was immediately apparent because the defendant admitted to committing social security fraud.

Because the search of the defendant's Facebook page was lawful, the evidence of social security fraud was discovered inadvertently while searching for evidence of material support to terrorists, and because it was immediately apparent that the messages between the defendant and his father were evidence of a crime, the plain view doctrine applies. Thus, the defendant's motion should be denied.

### III. CONCLUSION

The government respectfully requests that for the foregoing reasons, the defendant's objections to Magistrate Judge McCarthy's R&R be denied.

DATED: Buffalo, New York, May 25, 2017.

JAMES P. KENNEDY, JR.
Acting United States Attorney

BY: /s/ JONATHAN P. CANTIL
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5795
Jonathan.Cantil@usdoj.gov