UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

UNITED STATES OF AMERICA,

    v.

ARI ELIAS BAUM,

             Defendant.
───────────────────────────────────────

**14-CR-164-WMS-JJM**

**RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

## INTRODUCTION

Mr. Baum submits this memorandum in response to the Government's sentencing memorandum filed on November 9, 2017.  See Docket No. 143.  The Government filed this memorandum in response to two sentencing letters written by Mr. Baum's parents in support of their mentally disabled son.  In that memorandum, the Government advocates for a high-end guideline sentence and requests that this Court imprison Mr. Baum for a period of six-months.

    Ari Baum now submits this Memorandum in support of his request for a low-end guideline sentence of time served followed by a short period of supervised release as a sentence that would not only substantially punish Mr. Baum, but would also properly reflect Mr. Baum's meaningful acceptance of responsibility and his lifelong struggle with severe mental health issues.  Such a sentence is appropriate in this case in light of Ari Baum's history, characteristics, genuine acceptance of responsibility, and three and a half years of continued commitment to treatment and rehabilitation.

"Any society, any nation, is judged on the basis of how it treats its weakest members -- the last, the least, the littlest." ~Cardinal Roger Mahony, In a 1998 letter, Creating a Culture of Life

Aristotle, Mahatma Gandhi, Pearl S. Buck, Hubert H. Humphrey, and Pope John Paul II, have all echoed this sentiment throughout the ages. Since the age of eight, Ari has been diagnosed with severe mental health issues. He was institutionalized throughout his childhood and prescribed dozens of medications. Throughout various periods of Ari's life, he has been homeless and living in a van. Ari's life-long mental disabilities undoubtedly contributed to his criminal conduct in this case. Despite these challenges, over the past three and a half years Ari has embarked upon a very successful path of post-arrest rehabilitation. He has participated in mental health counseling and now is steadily employed as a painter. He is close with his family, and all of them very much want to put this ordeal behind them and move forward.

## PROCEDURAL HISTORY

Mr. Baum was originally charged in a Criminal Complaint. On May 13, 2014, Mr. Baum was arrested and made an initial appearance on that Criminal Complaint. At that time, Mr. Baum was temporarily detained pending a detention hearing. On May 15, 2014, a Detention hearing held. The Court ordered Mr. Baum released on a $10,000 secured bond with pretrial supervision. He was remanded pending posting of bond, and on May 20, 2014, Mr. Baum was released. On September 17, 2014, Mr. Baum was arrested pursuant to a Court authorized arrest warrant and an initial appearance on bail violation held. Mr. Baum was remanded pending bail revocation hearing. On September 18, 2014, a Status conference regarding bail/detention was held and the Court ordered Mr. Baum released on pretrial supervision to include home incarceration and electronic monitoring (EMS). On October 10, 2014, the Court ordered that Mr. Baum's conditions of release be reduced from home

incarceration to curfew. Mr. Baum has remained compliant with his conditions of release since that time.

On September 12, 2014, a Federal Grand Jury returned a 4-count Indictment charging the defendant with violating Title 42, United States Code, Section 1383a(a)(2); Title 42, United States Code, Section 1383a(a)(3); Title 18, United States Code, Section 641; and Title 18, United States Code, Section 1001(a)(2).  The charges are based on conduct that occurred over the period of March 2013 to December 2013. The matter was scheduled for trial on September 19, 2017.

On September 18, 2017, the day before trial was scheduled to commence, Mr. Baum appeared before this Court, and pled guilty to Count 1 of a four-count Indictment.  This Count charged that on or about December 19, 2013, he did knowingly and willfully make a false statement and representation of material fact for use by the Social Security Administration in determining rights to Supplemental Security Income, in that he falsely stated to the Social Security Administration that, since March 1, 2013, he had not been outside the United States for a calendar month or 30 consecutive days, whereas, in truth and in fact, since March 1, 2013, he had been outside the United States for a period exceeding a calendar month and 30 consecutive days, all in violation of 42 U.S.C. § 1383a(a)(2).

At sentencing, the Government will move to dismiss the open counts of the Indictment pending against Mr. Baum.  Sentencing in this matter is scheduled for November 15, 2017, and Mr. Baum was continued released on the previously imposed bail conditions.

## ADVISORY GUIDELINE RANGE

The statutory penalties and the factual basis for Mr. Baum's guilty plea are set forth in the Plea Agreement.  See Docket No. 137.  The Government and Mr. Baum agree that Guideline §2Bl.l(a)(2) applies to the offense of conviction and provides for a base offense level of six (6). After all guideline adjustments are made, the total offense level is four (4), and the criminal history category is I, resulting in a guideline imprisonment range of zero (0) to six (6) months, a fine range of $500 to $9,500 [sic], and a period of supervised release of one (1) year.   The Government and Mr. Baum agree to the Sentencing Guidelines calculations set forth in the agreement and neither party will advocate or recommend the application of any other guideline, or move for any guideline departure, or move for or recommend a sentence outside the guidelines, except as specifically set forth in the agreement.  The parties agree that the Court shall require restitution in the amount of $4,277.23 to be paid to the Social Security Administration as part of the sentence, pursuant to 18  U.S.C. § 3663(a)(3). Mr. Baum further understands that he will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court.

The Presentence Report prepared on October 23, 2017 concurs with this advisory guideline calculation.  (PSR ¶¶ 25-45).

## SENTENCING PROCEDURE

In a series of cases beginning with *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment and that moving

forward, the Guidelines were to be treated as "advisory." While a sentencing court must still correctly calculate the Guidelines range in each case, it may not treat that range as mandatory. *Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009). Rather, the Guideline range is merely "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

In rendering a sentence, a court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. *Gall*, 552 U.S. at 49-50, 53-60. A court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough*; 552 U.S. at 101; *United States v. Pepper*, 131 S. Ct. 1229, 1242-43, 179 L.Ed.2d 196 (2011). These goals are retribution, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2).

A critical Supreme Court directive designed to ensure that the guidelines are truly advisory is the authority of this Court to disagree with a particular guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations")); see also *Spears v. United States*, 555 U.S. 261, 266-67 (2009).

After determining the advisory Guidelines range as a "starting point" and "initial benchmark," *Gall,* 128 S. Ct. at 596, the sentencing court must then consider any applicable Guidelines departure.  The Supreme Court in *Gall* rejected the "rigid use of a mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." 552 U.S. at 47.   A "departure" is a downward adjustment to the final sentencing range specifically sanctioned by the Guidelines themselves.  It is frequently triggered by a prosecutor's request to reward cooperation or by other factors that take the case "outside the heartland" of cases or defendants contemplated by the Sentencing Commission.  Although the Sentencing Guidelines are now advisory, the Court in its initial guideline calculation is still required to look at permissible downward departures when calculating a sentence. See, e.g., *United States v. Galante*, 111 F.3d 1029, 1036 (2d Cir. 1997); *United States v. Ekhator*, 17 F.3d 53 (2d Cir. 1994); *United States v. Johnson*, 964 F.2d 124 (2d Cir. 1992).

Lastly, the Court must then consider all of the 18 U.S.C. § 3553(a) factors to determine whether a variance – a sentence outside the advisory guideline system – is warranted.  A "variance" occurs when a judge imposes a sentence above or below the otherwise properly calculated sentencing range based upon the application of the other statutory factors in 18 U.S.C. §3553(a).  While district courts must continue to base departures on guideline factors, "many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court—with greater latitude—under section 3553(a)."

## 18 U.S.C. § 3553 (a) FACTORS

As noted above, after the Court calculates the advisory Guidelines range and any grounds for a Guidelines departure are considered, the Court must ultimately impose a sentence that is consistent with 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a) mandates the court to impose a sentence that is "sufficient, but not greater than necessary" to meet the purposes of sentencing, a directive commonly referred to as the "parsimony clause." *United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007). The parsimony clause requires a sentencing court to impose the lower of two sentences when either of the two potential sentences would properly serve the statutory purposes of retribution, deterrence, incapacitation or rehabilitation. *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

The § 3553(a) factors to be considered when imposing a sentence are as follows:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   ( C ) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with the needed. . . training or . . . treatment in the most effective manner;

3) the kinds of sentences available;

4) the kinds of sentence and the sentencing range established for

7

      (A)  the applicable category of offenses committed by the applicable category of defendant as set forth in the Guidelines . . .;

   5)  any pertinent policy statement. . .[issued by the Sentencing Commission];

   6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   7)  the need to provide restitution to any victims of the offense.

  Under §3553(a), the sentencing judge is permitted to find any relevant facts appropriate for determining a sentence, whether or not that sentence is within or outside the advisory Guidelines range.  For the reasons set forth below, a low end guideline sentence of time served followed by a short period of Supervised Release is a sentence which will be sufficient, but not greater than necessary, consonant with the purposes of sentencing as statutorily set forth in Title 18 United States Code §3553.

## The Parsimony Clause

  Indeed, sentencing courts are free to disagree with the Guidelines' recommended sentence in any particular case, and may impose a different sentence based on a contrary view of what is appropriate under § 3553(a).  However, in determining an appropriate sentence, the sentencing court must apply the "parsimony clause" set forth in 18 U.S.C. § 3553(a), which provides that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The Second Circuit explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower

sentence. See id. at 142 (where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

## ARGUMENT

### I. THE HISTORY AND CHARACTERISTICS OF ARI BAUM AND THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

Ari Baum was born and raised in Buffalo, New York.  He was raised by his parents Dr. Bruce Baum and Wendy Baum. His parents divorced in 2007. Ari's dad resides in Buffalo, New York, is a retired professor from Buffalo State College. Ari's mom resides in Buffalo, New York, and is employed as a social worker. Ari has a close relationship with his parents.  Ari has one younger sister, Leah Baum, who resides in Boulder, Colorado, and is employed as a chemist. Ari and his sister have a very good relationship.

Ari has an extremely close and loving family. As can been seen by the letters of Ari's parents, his family loves him very much. See Docket No. 142.   The past three and a half years on pretrial supervision has had a positive impact on Ari.   He is receiving treatment for his mental health issues and making progress. Ari knows that there must be punishment for his conduct, and he must learn from that.  Yet, Ari remains hopeful for the future. Ari fully acknowledged his conduct in the instant case. Despite all that they have been through, Ari's family remains very supportive. See Docket No. 142.   Their love and support are one of the reasons for the significant strides Ari has made over the past year and a half.   Ari wishes for nothing more than to rebuild his life and ensure that he will never again get caught up in unlawful activities.

9

## RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

In response to the letters of Mr. Baum's parents, the Government filed a sentencing memorandum advocating for a six-month jail sentence. The sole argument made is that Mr. Baum went on what the Government portrays as a luxury vacation. This argument fails to address the various sentencing factors, and completely ignores Mr. Baum's history of significant mental health problems.

First, it is doubtful that most Americans would want to stay at the types of places Mr. Baum stayed at on his overseas trip. Ari lived in several very poor countries, staying with acquaintances and studying his religion. He was often able to live for less than a dollar a day overseas in poorer countries.

Second, the Government fails to mention that the majority of the money used to finance Mr. Baum's travels came from Ari's father, not Social Security. It neglects to mention, that of the $717.30 per month in Social Security benefits Mr. Baum received during the five-month period, $225 per month (roughly one-third) went to pay for a high-end water filtration system Mr. Baum had inexplicably financed for a home he did not have. (These payments are recorded in bank records provided to the Defense by the Government).

In its memorandum, the Government describes Mr. Baum's actions as demonstrating "selfishness, arrogance, and a brazen disregard for the rules." Yet, notably each of these characteristics are inherent in the severe mental impairments afflicting Mr. Baum which include: affective disorder, personality disorder, bipolar disorder, and attention deficit disorder. In its

memorandum, the Government declines to acknowledge or even mention Mr. Baum's history of mental health issues.

The Government completely ignore the fact at its request, Ari voluntarily came back to the Western District of New York to deal with this case. I first spoke with Ari in April of 2014 while he was living in Morocco. Over the course of several phone calls, I explained to him that there was a sealed criminal complaint and that he should come back to the U.S. to deal with his case. We did not know the extent of the charges against Ari, nor did we know what to expect when he returned home from Morocco. Presumably he could have stayed overseas and tried to avoid dealing with his charges. However, he did not do that. Instead, he returned to the United States voluntarily (the flight from Morocco to Toronto paid for by Ari's father) and he has remained in the Western District of New York for three-and-a-half years defending against this prosecution.

The Government completely fails to mention that Mr. Baum entered into this plea agreement even though his advisory guideline sentencing range after trial would have been the same: 0 to 6 months. The Government's sentencing submission advocates for a more severe punishment than would ever be imposed on another similarly situated defendant convicted of a $4,277 social security fraud.

In the weeks leading up to trial, the Government filed prejudicial pretrial submissions labeling Mr. Baum a terrorist despite the fact that there is no evidence to support that claim, and despite the fact that this case is solely about Social Security fraud. This coincided with media

11

coverage a week before trial, again labeling Mr. Baum a terrorist. To his credit, and despite his mental health issues, Mr. Baum was able to cope with the stress of a looming trial, the possibility of jail time, and the public perception that he was linked with terrorists, without cracking. He did not do anything rash, cease his counseling, or violate his supervision. Instead, he met with his attorneys, considered his options, and decided to take a plea.

As a result of this felony conviction, Mr. Baum will suffer significant collateral consequences. Notably, after returning to the United States, Mr. Baum's Social Security benefits were suspended and ultimately terminated. He has not received any money from Social Security since returning to the United States three-and-a-half years ago. He reapplied for benefits last year but was denied.

## II. ARI'S MENTAL HEALTH ISSUES

Most significantly, the Government's position fails to account for Mr. Baum's long history of significant mental health issues. Ari has an extensive history of both inpatient and outpatient mental health treatment, dating back to his early childhood. See PSR¶¶ 65-71. He was diagnosed with bipolar disorder and ADHD at the age of eight, and been in mental health counseling since that time. At various times between the ages of eight and seventeen, Ari was institutionalized at the Menninger Clinic in Topeka, Kansas; BryLin Hospital in Buffalo, New York; Niagara Falls Memorial Hospital in Niagara Falls, New York; Western New York Children's Psychiatric Center in West Seneca, New York; and several other psychiatric facilities. Throughout his childhood, Ari was prescribed several different mental health medications in an attempt to treat his disorders. See PSR¶¶67-70. Unfortunately, these mental health medications

had significant side effects that took a lasting toll on Ari. As a result of Ari's mental health issues he was determined to be totally disabled in 2002.

Presently, Ari continues to suffer from mental health issues, and he has been engaged in mental health treatment with Mid-Erie Counseling since May 2015. Since being arrested in 2014, Mr. Baum has taken the first steps toward freeing himself from the grip that his mental health issues that have held on him for so long. Given the central role that mental health struggles combined with over-prescribed medication played in his life, Ari has made huge strides forward. He has undertaken a course of conduct that clearly represents his sincere desire to continue his rehabilitative efforts and to remain a law abiding and productive member of society. He has made significant progress that would undoubtedly be derailed if he were incarcerated for any additional period of time.

### III.     DETTERENCE AND THE KINDS OF SENTENCES AVAILABLE

Incarceration will not provide any additional measure of deterrence for Mr. Baum. It may provide incapacitation, retribution, and propaganda, but not deterrence. Ari's success going forward depends entirely on how well he can manage his mental health. Despite his issues, Ari has done remarkably well. He has the support of his family and he intends to continue his mental health counseling.

It is significant that Mr. Baum has never previously been incarcerated except for the ten days he spent in custody for this case. As the Second Circuit has suggested, sentencing judges should take into account any prior period of incarceration the defendant has served, under the theory that

incremental additional punishment may be necessary to provide the deterrent impact that a prior sentence may have failed to impart. See *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) ("A major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences . . . for the prior offenses."). But when a defendant previously has never been incarcerated, there is no point of comparison for the sentencing judge to consider in evaluating what incremental additional sentence may be required for deterrence purposes. In Mr. Baum's case, there is no reason to believe that six months in prison will be a general deterrence. If a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, a judge should choose the former. See *Ministro-Tapia,* 470 F.3d at 142 (where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence).

Further incarceration also is unnecessary to protect the public from Mr. Baum. An additional few months in prison may keep Mr. Baum temporarily separated from the public, but this time will do nothing to address the root causes of his offense. Only additional, effective treatment will do that. As stated above, Mr. Baum has now been compliant with conditions of pretrial release for more than three and a half years. He is eager to put this entire saga behind him and to continue on this new road.

Even under the PSR's calculation, which gives an advisory sentencing range of 0-6 months, the Guidelines do not require a term of imprisonment in Mr. Baum's case. Under this calculation,

Mr. Baum's sentence falls in Zone A of the sentencing table. See PSR ¶45. Mr. Baum's Adjusted Offense Level is a 4 and his Criminal History Category is I, Zone A. The advisor guideline calculations place Mr. Baum in one of the lowest Guideline ranges on the sentencing table. See PSR ¶45. For sentences in this zone, the Guidelines provide that no term of imprisonment is required. See Guideline § 5C1.1(b). See PSR ¶45. Therefore, the advisory guideline range and the 18 U.S.C. § 3553(a) factors all support a sentence that does not involve incarceration.

## CONCLUSION

Mr. Baum understands that his actions were wrong and extremely disappointing to himself and to those who love him. He does not deny that he has made choices of which he is not proud. However, Ari has many redeeming qualities. At thirty-three years old, he has the love and support of his family. By continuing to manage his mental health, Ari can make positive and permanent changes in his life. Based on the foregoing, Ari Baum respectfully requests a low-end guideline sentence of time served followed by a short period of Supervised Release as a sentence that is sufficient, but not greater than necessary to punish him for his crime and deter him from any further criminal conduct.

**DATED**: Buffalo, New York, November 13, 2017

Respectfully submitted,

**/s/  Brian P. Comerford**
Brian P. Comerford
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
brian_comerford@fd.org
Counsel for Defendant Ari Elias Baum

**/s/ Fonda Dawn Kubiak**
Fonda Dawn Kubiak
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341; FAX: 551-3346
fonda_kubiak@fd.org
Attorney for Defendant, Ari Elias Baum

**TO:** Jonathan Paul Cantil
Assistant United States Attorney

Alexandra G. Piskorz
U.S. Probation Officer